**Louis J. GNOTTA, Appellant,**

v.

**UNITED STATES of America; the United States Civil Service Commission; the Department of the Army, Kansas City District Corps of Engineers; Colonel W. G. Kratz; M. F. Hoy; D. H. Myers; M. M. Turner; O. E. Pettijohn; F. M. Nelson; H. B. Haworth, Appellees.**

**No. 19502.**

United States Court of Appeals Eighth Circuit.

Sept. 10, 1969.

Rodger J. Walsh, Kansas City, Mo., submitted brief for appellant.

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for appellees, Calvin K. Hamilton, U. S. Atty., and John L. Kapnistos, Asst. U. S. Atty., filed brief for appellees.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

BLACKMUN, Circuit Judge.

Louis J. Gnotta appeals from the dismissal of his three-count complaint based on his not receiving a promotion in 11 years of work with the Corps of Engineers, Kansas City District, Department of the Army. His claim is that this absence of promotion was due to discrimination against him because of his Italian ancestry.

The defendants are the United States; the United States Civil Service Commission; the Department of the Army, Kansas City District, Corps of Engineers; Col. W. G. Kratz, district engineer and principal supervisor; M. F. Hoy, district controller and executive assistant; D. H. Myers, chief personnel officer; M. M. Turner, assistant chief of the engineering division; O. E. Pettijohn, chief of the real estate division; F. M. Nelson, assistant chief of the real estate division; and H. B. Haworth, supervisor.

By the first count of his complaint the plaintiff seeks review of the decision of the Board of Appeals and Review of the United States Civil Service Commission; by its second count he seeks a writ of mandamus to compel the individual defendants to perform duties said to be imposed upon them by Equal Employment Opportunity regulations; and by its third count he seeks $10,000 damages. Jurisdiction is claimed, for the respective counts, under the Administrative Procedure Act, now 5 U.S.C. §§ 701–706; the Act of October 5, 1962, Pub.L. No. 87–748, § 1(a), 76 Stat. 744, now 28 U.S.C. § 1361; and the Tucker Act, 28 U.S.C. § 1346(a) (2).

The defendants, through the United States Attorney, filed an answer to the complaint and, thereafter, a motion to dismiss or, in the alternative, for summary judgment. Judge Oliver granted the motion to dismiss and did so "for want of proper jurisdictional allegations in plaintiff's complaint." The court's supporting memorandum is not reported. Gnotta appeals.

*The administrative proceeding.* Mr. Gnotta filed his administrative complaint under regulations issued pursuant to Executive Order No. 11246 of September 28, 1965, 30 F.R. 12319, 2 U.S.Code Cong. & Ad.News, p. 4416 (1965), entitled, "Equal Employment Opportunity",[1] and,

---

[1] "Section 101. It is the policy of the Government of the United States to provide equal opportunity in Federal employment for all qualified persons, to prohibit discrimination in employment because of race, creed, color, or national origin, and to promote the full realization of equal employment opportunity through a positive, continuing program in each executive department and agency. The policy of equal opportunity applies to every aspect of Federal employment policy and practice.

"Sec. 102. The head of each executive department and agency shall establish and maintain a positive program of equal employment opportunity for all civilian employees and applicants for employment within his jurisdiction in accordance with the policy set forth in Section 101.

"Sec. 103. The Civil Service Commission shall supervise and provide leadership and guidance in the conduct of equal employment opportunity programs for the civilian employees of and applications for employment within the executive departments and agencies and shall review agency program accomplishments periodically. In order to facilitate the achievement of a model program for equal employment opportunity in the Federal service, the Commission may consult from time to time with such individuals, groups, or organizations as may be of assistance in improving the Federal program and realizing the objectives of this Part.

"Sec. 104. The Civil Service Commission shall provide for the prompt, fair, and impartial consideration of all complaints of discrimination in Federal em-

assertedly, under the thereby superseded Executive Order No. 10925 of March 8, 1961, 26 F.R. 1977, 1 U.S.Code Cong. & Ad.News, p. 1274 (1961).

The ensuing agency hearing took place in October 1966, lasted four days, produced a four-volume transcript of 966 pages, and brought out certain undisputed facts:

Plaintiff Gnotta was born July 3, 1922, of Italian parents in Kansas City, Missouri. He is a World War II veteran, attained the rank of sergeant, was awarded the Purple Heart with Oak Leaf Cluster and two battle stars, and received an honorable discharge from the service. He was employed by the Corps of Engineers in November 1955 as a cartographic compilation aide at grade GS–7. He has never been promoted out of that grade. He has a high school education and some engineering training. He is a civil defense instructor. He has an AEC license to handle cobalt 60. In 1956–57 he passed certain civil service written examinations for professional engineering. He is registered with the Missouri State Board of Registration for Architects and Professional Engineers as an engineer-in-training (Mo.Rev.Stat. § 327.150 and § 327.035, subd. 2 (1959)). Since July 25, 1960, he has filed numerous applications for promotion with respect to vacancies with the Corps. He has not been chosen for any of these. He does not possess a security clearance. He has not been selected for further training. No one else has been held so long in the District without a promotion. There are no Italians there above grade GS–12

The hearing, however, produced conflict as to other facts which bear upon Gnotta's claim of discrimination because of national origin:

Defendant Haworth, Mr. Gnotta's supervisor until 1960, and, apparently, the pivotal figure in Gnotta's discomfort, testified that he felt no animosity toward Gnotta. Other witnesses stated that friction or animosity existed between the two men. When Gnotta joined the Corps, he and Haworth were both in GS–7. Haworth, however, has been promoted to GS–11. The two men have hardly spoken for a number of years. Haworth acknowledged that he had talked to Gnotta only once since 1960. He denied that he had discriminated against him because of his national origin or in any way. Witness Herbert, who had worked with Mr. Gnotta under Mr. Haworth, said that Haworth once told him he should not associate with Gnotta. Witness Vaught, who also worked with Gnotta, said that Haworth told him he would not be promoted if he associated with Gnotta. Haworth denied that he told Vaught and Herbert not to associate with Gnotta.

On the other hand, a number of witnesses (Herbert, Brayles, Montanari, Giorga, Davis, Norman Smith, Frederickson, Corolla, Lee, Haworth, Hoy, Edward C. Smith, Lowe, Nelson, Pettijohn, Valenstein, and Rollings), some of them of obvious Italian descent, testified, or by affidavit stated, that they did not think Gnotta was discriminated against because of his national origin, or that they knew of no discrimination against Italians in the Corps, or that they themselves did not discriminate. Other witnesses

---

ployment on the basis of race, creed, color, or national origin. Procedures for the consideration of complaints shall include at least one impartial review within the executive department or agency and shall provide for appeal to the Civil Service Commission.

"Sec. 105. The Civil Service Commission shall issue such regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities under this Part, and the

head of each executive department and agency shall comply with the regulations, orders, and instructions issued by the Commission under this Part."
Sections 101 and 104 have been amended, in ways not of significance here, by Executive Order No. 11375 of October 17, 1967, 32 F.R. 14303, 2 U.S.Code Cong. & Ad. News, pp. 3519, 3520 (1967). Executive Order Nos. 11246 and 11375 have been superseded in part by Executive Order No. 11478 of August 8, 1969.

(D'Marco and Van Orman) felt or suspected that there was discrimination and still others (Vaught and Thomas) felt that it was directed against Gnotta.

Mr. Gnotta stated that he never had an Italian supervisor; that in the Kansas City community at least 10 per cent of the people are of Italian origin; that the newspapers there are prejudiced against Italians; that he was not given proper equipment; that he was denied counseling and self-improvement; and that he is the only one in his group regularly excluded from management activities.

The hearing officer made recommendations and the Deputy Equal Employment Opportunity Officer held that the evidence did not support the allegations of discrimination. The Board of Appeals and Review of the United States Civil Service Commission affirmed this decision in September 1967. The administrative remedies were thus exhausted. The present suit followed.

Mr. Gnotta's argument is that he is entitled to due process; that although the Executive Order does not expressly provide a right of action, this does not prevent a federal court's fashioning an appropriate and effective remedy, citing Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); that the Executive Order has the force and effect of a statute; and that it creates the right and the *Jones* case creates the remedy.

One is inclined, initially and on the face of plaintiff Gnotta's testimony at the administrative hearing, to have a measure of sympathy for him for he is, in a sense, "bucking the establishment" or what seems to him to be an inflexible employment hierarchy. One easily senses his frustration with so long a work period without promotion, with a non-communicating former supervisor, with co-workers promoted over him, and with the daily discomfiture of a personality conflict. Contrastingly, one might note that the plaintiff chose to be sensitive about, rather than to assert rightful pride in, his Italian ancestry.

It may be conceded, as the plaintiff urges, that a public employee is entitled to a distinct measure of due process with respect to his employment. This court enunciated that principle as to procedural due process in Jenkins v. Macy, 357 F.2d 62, 68–70 (8 Cir. 1966), where a federal employee's discharge was at issue, and we there cited the fourteenth amendment cases of Slochower v. Board of Higher Educ., 350 U.S. 551, 556, 76 S.Ct. 637, 100 L.Ed. 692 (1956), and Wieman v. Updegraff, 344 U.S. 183, 191–192, 73 S.Ct. 215, 97 L.Ed. 216 (1952), with their self-incrimination and loyalty oath contexts. And, as the plaintiff points out, appropriate compliance with procedural requirements also was stressed in federal employee situations in Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416 (1968), and McTiernan v. Gronouski, 337 F.2d 31 (2 Cir. 1964).

As the plaintiff further observes, it has been said that Executive Orders such as Nos. 11246 and 10925 are to be accorded the force and effect of an act of Congress. Farkas v. Texas Instrument, Inc., 375 F.2d 629, 632 (5 Cir. 1967), cert. denied, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471; Farmer v. Philadelphia Elec. Co., 329 F.2d 3, 8 (3 Cir. 1964). In each of these two cases, however, the court observed that the Executive Order did not contemplate its enforcement by private civil action, 375 F.2d at 632–633 and ns. 2 and 3; 329 F.2d at 8–10, and pointed the way to enforcement, instead, through the President's Committee on Equal Employment Opportunity or, possibly, in proper fact situations, under the Civil Rights Act of 1964. These are avenues which plaintiff Gnotta does not pursue.

Chapter 7 of Title 5 U.S.C. concerns judicial review of agency action. Section 702 provides that a person "suffering legal wrong because of agency action * * * is entitled to judicial review thereof." Section 706(1) provides that the reviewing court shall compel agency action unlawfully withheld. But § 701 (a) (2) specifically states that the chapter does not apply where "agency action

is committed to agency discretion by law."

■ Surely, promotion or nonpromotion of employees within a department is a matter of supervisory discretion and not ordinarily subject to judicial review. 5 U.S.C. § 554(a) (2). See McEachern v. United States, 321 F.2d 31, 33 (4 Cir. 1963). It has been said that courts cannot undertake to pass on a plaintiff's qualifications for any given post or to compare them with those of an incumbent. Powell v. Brannan, 91 U.S. App.D.C. 16, 196 F.2d 871, 873 (1952). A claim that the plaintiff's supervisor entertained a dislike for him has not sufficed for judicial review. Fass v. Ruegg, 379 F.2d 216, 218 (6 Cir. 1967). And Professor Davis asks, "Do we want courts inquiring into personnel management—salary increases, sick leave, office hours, allocation of parking spaces in the basement of the agency's building?" 4 K. Davis, Administrative Law Treatise § 28.16, at 82 (1958).

The integrity of these authorities and the soundness of the principles they espouse, would ordinarily incline a court to avoid interfering with administrative personnel decisions and to take a dim view of Gnotta's claims here. Indeed, his is not even a discharge case. He complains not of agency action but mainly of agency inaction.[2] And he demands a specified employment status.

But Gnotta also alleges something more. He attributes his unimproved status to discrimination because of national origin, and this, if true, is antagonistic to expressed government, and executive, policy.

This would normally take us to, or leave us in, the murky area of the scope of judicial review of agency action of this type. See, for example, Charlton v. United States, 412 F.2d 390 (3 Cir. 1969) (both opinions); 4 Davis, Admin-

istrative Law Treatise ch. 28 (1958) and, in particular, § 28.16 (Supp.1965). We could proceed to attempt to resolve the question whether agency inaction of the type complained of here is reviewable by federal courts and, if the answer should be in the affirmative, to resolve the secondary question whether on this record, with its conflicting testimony, the agency decision is to remain undisturbed. Or we might assume a positive answer to the first question, without deciding it, and arrive at a positive answer to the second, on the theory that personality conflict and a non-communicating coworker do not of themselves equate with national origin discrimination, that the record at best is conflicting, and that there is substantial evidence to support the agency decision.

We agree with Judge Oliver, however, that Gnotta's selected procedure and his choice of defendants raise serious questions of governmental immunity and of consequent jurisdiction. We must, of course, face these issues first. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). When we do, Gnotta's appeal necessarily falls because of the identity of the defendants he had chosen to sue.

The defendants selected are the United States, the Civil Service Commission, the Army's Corps of Engineers, and seven individual employees of the Corps. But it is established that:

■ 1. One cannot sue the United States without its consent and a court has no jurisdiction of a suit against the United States to which it has not consented. United States v. Sherwood, 312 U.S. 584, 586–588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Mancilla v. United States, 382 F.2d 269 (9 Cir. 1967), cert. denied, 390 U.S. 982, 88 S.Ct. 1104, 19 L.Ed.2d 1280.

---

**2.** We almost hesitate even to mention this, for it is reminiscent of the old negative order approach of somewhat sad and confusing memory. See Proctor & Gamble Co. v. United States, 225 U.S. 282, 32 S.

Ct. 761, 56 L.Ed. 1091 (1912), and Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147 (1939).

2. "Congress has not constituted the [United States Civil Service] Commission a body corporate or authorized it to be sued *eo nominee;*" "a suit involving the action of the Commission generally must be brought against the individual Commissioners as members;" and the Administrative Procedure Act is not "to be deemed an implied waiver of all governmental immunity from suit." Blackmar v. Guerre, 342 U.S. 512, 514–516, 72 S.Ct. 410, 412, 96 L.Ed. 534 (1952); Bell v. Groak, 371 F.2d 202, 204 (7 Cir. 1966).

3. The Department of the Army is a part of the executive branch of the United States Government. 10 U.S.C. §§ 131, 133 and 3010.

The plaintiff has not demonstrated that the United States has consented to be sued in the context of the relief requested by the first and second counts of the complaint, namely, positive relief directed to enhanced employment status. Clearly, then, the district court's action in dismissing the first and second counts as to the United States, the United States Civil Service Commission, and the Department of the Army was correct for the court had no jurisdiction of those counts as against those defendants.

The first two counts are also dismissable with respect to the seven named individual employee defendants. A suit against an officer of the United States is one against the United States itself "if the decree would operate against" the sovereign; Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963); or if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration", Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act", Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949). See Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). These principles, we feel, operate to identify the first and second counts against the named individuals with counts against the United States, for relief under the counts would compel those individuals to promote the plaintiff, with the natural effect a promotion has upon the Treasury, and to exercise administrative discretion in an official personnel area. This obviously is not a case which concerns either of the exceptions recognized in Dugan v. Rank, supra, 372 U.S. at 621–622, 83 S.Ct. 999, namely, where the officer's act is beyond his statutory power or where, although the action is within the scope of his authority, the power, or the manner of its exercise, is constitutionally void. See Simons v. Vinson, 394 F.2d 732, 736 (5 Cir. 1968), cert. denied, 393 U.S. 968, 89 S.Ct. 398, 21 L.Ed.2d 379.

The first and second counts thus were properly dismissed as to all named defendants.

The third or damage count remains. For the reasons set forth above, it, too, is dismissable as to all defendants named other than the United States. The plaintiff, however, bases the count specifically on the Tucker Act, 28 U.S.C. § 1346(a) (2), which gives the United States district courts original jurisdiction, concurrent with the Court of Claims, of

"Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort"

and thereby suggests the existence of consent to be sued. As to this, we adopt Judge Oliver's comments:

"The plaintiff does not allege that his alleged cause of action was created or authorized by any particular provision or section of the Constitution, Act of Congress, [or] regulation of

any executive department. Nor does he allege what sort of an express or implied contract he attempts to base his claim. None of the executive orders or regulations which the complaint cites purports to confer any right on an employee of the United States to institute a civil action for damages against the United States, in the event of their violation, even if it should be established that plaintiff's failure to have been promoted as an employee of the Corps of Engineers was in fact due to discrimination in violation of the Executive Orders pleaded. Congress has complete power either to create or to refuse to create such a remedy. It did not authorize civil actions for damages under any of the laws (including the Executive orders and regulations) applicable to facts pleaded by plaintiff in this case.

\* \* \* \* \* \*

"The [1964] amendment [of 28 U.S.C. § 1346] merely extended to the district court jurisdiction over cases which formerly could be tried only in the Court of Claims. \* \* \* That statute does not authorize and it is not broad enough to confer jurisdiction to hear and determine a claim for damages arising out of alleged discriminatory practices which may have resulted in an employee of the Corps of Engineers being 'passed over' for promotion. See Love v. United States, (8th Cir. 1943) 108 F.2d 43 [cert. denied 309 U.S. 673, 60 S.Ct. 716, 84 L.Ed. 1018] \* \* \* \*."

■ We emphasize that Executive Order No. 11246 enunciates government policy by way of prohibiting discrimination because of national origin; imposes that policy on the "head of each executive department and agency"; and directs the Civil Service Commission to "supervise and provide leadership and guidance", to provide for the impartial consideration of all complaints of discrimination, for at least one impartial review within the department, and for appeal to the Commission. All this has been provided to plaintiff Gnotta (except that he now challenges on appeal the impartiality of the trial examiner). But none of the Executive Order's language speaks in terms of money damages or of a money claim against the United States.

The third count, too, was properly dismissed.

■ On the last page of his appellate brief the plaintiff seems to suggest the applicability of 28 U.S.C. § 1343(4) which grants the district court jurisdiction "of any civil action authorized by law" to recover damages or to secure equitable relief under any act of Congress for the protection of civil rights. No reference to this statute is in the complaint and it does not appear to have been called to the attention of the district court. In any event, the Executive Order did not provide a civil action "authorized by law", within the meaning of § 1343(4). Congress of Racial Equality v. Commissioner, Social Security Administration, 270 F.Supp. 537, 542 (D.Md.1967). See Farmer v. Philadelphia Elec. Co., supra, 329 F.2d at 8–10.

We suspect that the plaintiff has no real disagreement with most of what has been said above. His emphasis here seems to be on Jones v. Alfred H. Mayer Co., supra, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

This court, of course, is most familiar with the *Jones* case. We fail to see its application here, and we get little assistance from the plaintiff's argument as to its general applicability. The Joneses did invoke federal jurisdiction under § 1343(4) but their action, if 42 U.S.C. § 1982 was applicable, was then clearly "authorized by law". Jones v. Alfred H. Mayer Co., supra, 392 U.S. at 412 n.1, 88 S.Ct. 2186, 20 L.Ed.2d 1189. The Supreme Court held that § 1982 was applicable. In the present case, there is nothing comparable to § 1982 unless the Executive Order in question could so

qualify. We have held above that it does not.

Plaintiff Gnotta has too many hurdles to overcome in this lawsuit as presently formulated.

Affirmed.