**Rudolph J. HENDERSON, Plaintiff,**

v.

**DEFENSE CONTRACT ADMINISTRATION SERVICES REGION, NEW YORK, et al., Defendants.**

**No. 72 Civ. 5420.**

United States District Court,
S. D. New York.

Dec. 31, 1973.

Jack Greenberg, William L. Robinson, New York City, for plaintiff.

Paul J. Curran, U. S. Atty., by Joel B. Harris, Asst. U. S. Atty., New York City, for defendants.

## MEMORANDUM AND ORDER

PIERCE, District Judge.

Plaintiff, a Contract Relations Specialist in the Office of Contract Compliance, Defense Contract Administration Services, (DCASR), New York, alleges that the defendants have engaged in racially discriminatory employment practices against him. The action seeks to enjoin these practices, redress the alleged failure of DCASR to establish ra-cially neutral employment and office procedures and for a declaratory judgment.

The government has moved for judgment on the pleadings under Rule 12(c) of the Fed.R.Civ.P. alleging that (1) the Court lacks jurisdiction over the subject matter and (2) the complaint fails to name an indispensable party. The government has also moved to dismiss on the ground that the complaint is not timely.

### A. Jurisdiction

■ Plaintiff relies on 28 U.S.C. § 1343(4) as its jurisdictional basis. That section provides inter alia that "district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights . . . ." It is clear that this statute supplies a jurisdictional basis only if the action is otherwise authorized by law. Blaze v. Moon, 315 F. Supp. 495 (S.D.Texas 1970), aff'd, 440 F.2d 1348 (5th Cir. 1971). It is plaintiff's position that this suit is authorized by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–1 et seq., as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e–1 et seq. which includes discrimination in federal employment.

Section 2000e–16(c) of the 1972 Act, which was enacted in March 24, 1972, provides that a federal employee or an applicant for employment "aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 . . . ." Prior to this federal employees were not protected by the provisions of Title VII. The government therefore argues that since the complaint concerns actions which occurred prior to the 1972 Act that Act has no application to this suit. So the question arises: Does section 2000e–16(c) have retroactive effect? Plaintiff contends that statutes that are

remedial or procedural in nature are applicable to cases pending at the time of their enactment and that since section 2000e–16(c) is remedial in nature it therefore applies to his case. The government does not contest the validity of the general proposition but asserts that it has no applicability to the present case. It argues that rather than constituting a mere procedural change section 2000e–16(c) is a waiver of sovereign immunity and therefore creates a new substantive right, i.e., allowing an aggrieved party to sue the federal government. The plaintiff, on the other hand, argues that federal employees have long had the right not to be discriminated against on the basis of race by their federal employer and that the section in question merely provides a new remedy for this long existing right. The limited case law on this point is in conflict.[1]

The Court agrees with plaintiff's position that federal employees have long had the right to be free from job discrimination. Thus for many years prior to March 24, 1972 a series of Executive Orders provided safeguards to federal employees against racial discrimination. The earliest one relevant here is E.O. 9980, July 26, 1948, 3 C.F.R. 720 (1943–48 Comp.). There followed E.O. 10590, January 18, 1955, 3 C.F.R. 237 (1954–58 Comp.); E.O. 10925, March 6, 1961, 3 C.F.R. 448 (1959–63 Comp.); E.O. 11246, September 24, 1965, 3 C.F.R. 339 (1964–65 Comp.), and E. O. 11478, August 8, 1969, 3 C.F.R. 803 (1966–70 Comp.). All of these Orders clearly establish a policy against racial discrimination in Federal employment and all prescribe procedures for processing of discrimination complaints varying somewhat from Order to Order. Moreover, section 7151 of Title 5 of the United States Code declares it to be the official policy of the United States "to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex or national origin."

However, while it is true that in certain limited cases federal employees have been allowed to bring suit in federal courts alleging racial employment discrimination,[2] in the main, their efforts have been defeated by the government's successful assertion of the defense of sovereign immunity.[3] But, as shown above, it is incontrovertible, that federal employees did have, long before the passage of the 1972 Act, the substantive right not to be discriminated against on the basis of race by their federal employer.

The drafters of the 1972 Act were aware that while federal employees did have this right, they were very much disenchanted with the means available for its enforcement. Thus the Senate Report on the 1972 Amendment to Title VII stated that "testimony before the [Senate] Labor Subcommittee reflected a general lack of confidence in the effectiveness of the complaint procedure on the part of Federal employees."[4] Further, it was found that "an aggrieved Federal employee [did] not have access

1. The following cases have held the section to be retroactive: Grubbs v. Butz, No. 875–73 (D.D.C., Aug. 23, 1973); Walker v. Kleindienst, 357 F.Supp. 749 (D.D.C.1973); Johnson v. Froehlke, No. 72–677H (D.Md., Jan. 4, 1973). Cf. Johnson v. University of Pittsburgh, 359 F.Supp. 1002 (W.D.Penn. 1973). The following cases have reached a contrary result: Hill-Vincent v. Richardson, 359 F.Supp. 308 (N.D.Ill.1973); Mosely v. United States, No. 72–380–S (S.D.Cal., Jan. 23, 1973); Freeman v. Defense Construction Supply Center, No. 72–241 (S.D.Ohio, Oct. 14, 1972).

2. See, e. g., Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971).

3. See, e. g., Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972); Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970).

4. Legislative History of the Equal Employment Opportunity Act of 1972, Subcommittee on Labor of the Committee on Labor and Public Welfare, 92nd Cong., 2d Sess., 423 (Comm.Print 1972).

to the courts. In many cases, the employee [had to] overcome a . . . Government defense of sovereign immunity . . . ." [5] It was to curtail these shortcomings that the statute was to provide that "[a]ggrieved [federal] employees or applicants [would] also have the full rights available in the courts as [were] granted to individuals in the private sector under title VII." [6]

▉▉ In light of this brief background, the Court concludes that the 1972 Act is a remedial statute "which afford[s] a remedy, or improve[s] or facilitate[s] remedies already existing for the enforcement of rights and the redress of injuries . . . ." 2 J. G. Sutherland, Statutory Construction §. 3302 (3rd ed. 1943). Further, the 1972 Act is clearly modern social legislation and such statutes are generally regarded as remedial in nature. 3 J. G. Sutherland, Statutory Construction § 5702 (1973 Cum.Supp.). It is a well settled rule of construction that "a remedial statute shall be so construed as to make it effect its evident purpose and if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied." Walker v. Kleindienst, 357 F.Supp. 749, 751 (D.D.C.1973). The 1972 Act simply added another forum or tribunal in which federal employees may redress their right not to be discriminated against in employment[7] and reflects a Congressional policy that the right of federal employees against discrimination will be better protected if they are able to sue in federal court if dissatisfied with the agency determination.

The Court therefore concludes that it has jurisdiction to entertain plaintiff's claim.

### B. *Indispensable Party*

The government has also moved to dismiss the complaint on the ground that it fails to name an indispensable party, the Civil Service Commission. The Court finds this position without merit.

▉▉ Section 2000e–16(c) specifically provides that in a civil action brought by an aggrieved employee "the head of the department, agency, or unit, as appropriate, shall be the defendant." Section 2000e–16(a) makes it clear that the terms "department", "agency" and "unit" are used to describe the employing branch. It follows, then, that the plain terms of the statute indicate that the Civil Service Commission is not an indispensable party. While conceding this, the government, however, argues that the plaintiff in this case is appealing from a decision made by the Commission and that in such a case judicial review is limited to a determination of whether that decision was arbitrary and capricious and that therefore the Civil Service Commissioners are indispensable parties to that determination. The government urges that for this reason the terms "department, agency or unit" as used in section 2000e–16(c) should be read to include the Civil Service Commission. The government's contention is, of course, bottomed on the allegation that the scope of judicial review in this type of proceeding is limited to a mere determination of whether there is a rational basis for the Civil Service Commission's decision. However, the Court has concluded that such is not the case and that the plaintiff herein is entitled to a de novo trial.

▉ As indicated above it was Congress' intent to grant federal employees the same full rights of access to federal courts as were available to employees in the private sector. Thus section 2000e–16(d) states: "The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder." These provisions

---

5. Id. at 425.

6. Id.

7. Compare Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952) in which a statute reducing the number of forums where the United States could be sued was held to be applicable to pending cases.

are the same ones applicable to civil actions brought by private employees.

The Supreme Court has recently stated that "court actions under Title VII [initiated by private employees] are de novo proceedings and . . . a Commission['s] 'no reasonable cause' finding does not bar a lawsuit in the case." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 799, 93 S.Ct. 1817, 1823, 36 L. Ed.2d 668 (1973). Courts in at least four circuits had previously held likewise.[8] The Court is aware, however, that these cases did not address themselves to the precise issue before it, that is, the scope of review in a Title VII action by a federal employee. Rather these cases dealt with a different though analogous question, i.e., whether the absence of a finding by the Equal Employment Opportunity Commission of reasonable cause to believe that the discriminatory charge was true or its positive finding that there was no reasonable cause to justify the charge barred a private suit. Nevertheless, we feel that the rationale underlying these decisions is equally applicable to the case herein. As one court has stated: "If a litigant is entitled to a trial de novo as a jurisdictional matter, he is also entitled to a plenary review of the alleged discrimination absent an express limitation in the law which creates the cause of action. Neither the 1964 [Civil Rights] Act nor the 1972 Act contains such a provision." Thompson v. United States Dept. of Justice, Bur. of Narc., 360 F.Supp. 255, 258 (N.D.Cal.1973).

Moreover, the legislative history of the 1972 Act supports our conclusion that the plaintiff is entitled to a de novo trial. Thus, Senator Cranston, one of the co-sponsors of the Act, was originally reported to have stated that there was no right to a de novo trial in this type of suit.[9] Subsequently, after this statement was brought to his attention, he corrected the record and categorically asserted: "As with other cases brought under title VII of the Civil Rights Act of 1964, Federal district court review would not be based on the agency and/or CSC record and *would be a trial de novo*." [10]

Based on its reading of section 2000e–16 and the fact that the plaintiff herein is entitled to a de novo trial the Court concludes that the Civil Service Commission is not an indispensable party.

C. *Timeliness of the Suit*

■ Section 2000e–16(c) of the 1972 Act provides for an aggrieved party to file a civil action within 30 days after "receipt of notice of final action" taken by the Civil Service Commission. The government argues that the complaint does not allege that the suit was filed within this 30 day requirement and that therefore it should be dismissed as jurisdictionally defective. Plaintiff has answered by alleging that the suit was timely filed. In view of this the plaintiff is hereby ordered to file an amended complaint on or before January 11, 1974 addressing itself to this question.

D. *Conclusion*

The government's motion for judgment on the pleadings is denied and the plaintiff is ordered to file an amended complaint.

So ordered.

---

8. Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir. 1971) ; Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136 (5th Cir. 1971) ; Flowers v. Local 6, Laborers International Union of North America, 431 F.2d 205 (7th Cir. 1970) ; Fekete v. U. S. Steel Corp., 424 F.2d 331 (3rd Cir. 1970).

9. Legislative History, supra, at 1744.

10. 119 Cong.Rec.S.1219 (daily ed. Jan. 23, 1973) (emphasis added).