Clarence **BROWN**, Plaintiff-Appellant,

v.

**GENERAL SERVICES ADMINISTRA-TION** et al., Defendants-Appellees.

No. 935, Docket 73–2628.

United States Court of Appeals, Second Circuit.

Argued June 14, 1974.

Decided Nov. 21, 1974.

Eric Schnapper, New York City (Jeff L. Greenup, Jack Greenberg, James M. Nabrit III, Johnny J. Butler, Joseph P. Hudson and Greenup & Miller, New York City, on the brief), for plaintiff-appellant.

Charles Franklin Richter, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., and Gerald A. Rosenberg, Asst. U. S. Atty., New York City, on the brief), for defendants-appellees.

Before LUMBARD, HAYS and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal from a judgment entered September 28, 1973 in the Southern District of New York, Lloyd F. MacMahon, *District Judge,* dismissing the complaint in an action brought against an agency and officials of the federal government to redress alleged racially discriminatory employment practices presents the questions (1) whether Section 717(c) of the Equal Employment Opportunity Act of 1972 [1] applies retroactively to claims

1. Section 717(c) of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(c) (Supp. II 1972), provides in pertinent part:

"Within thirty days of receipt of notice of final action taken by [an] . . . agency, or by the Civil Service Commission upon an appeal from a decision or or-

arising before its enactment; (2) whether the statute pre-empts any other federal jurisdictional basis for appellant's claim; and (3) whether in any event appellant has failed to exhaust administrative remedies. We hold that each of these questions must be answered in the affirmative. We affirm.

## I. FACTS

Appellant Clarence Brown, a black, has been employed by the General Services Administration (GSA) Regional Office No. 2 (New York City) since 1957. He has not been promoted since 1966. His current job classification is Communications Specialist, GS–7, Telecommunications Division, Automated Data Telecommunications Service.

In December 1970, Brown was referred for promotion to GS–9 by his supervisors along with two white employees, Ownbey and Trost. All three were rated "highly qualified". Trost was the only one promoted. Brown filed an administrative complaint of racial discrimination with the GSA Equal Employment Opportunity Office. The complaint was withdrawn, however, after Brown was told that further promotions would soon be available and that he had been denied promotion because of lack of the requisite "voice experience".

Brown claims that he thereafter acquired full "voice experience". In June 1971, another GS–9 promotional opportunity opened. Brown and Ownbey again were rated "highly qualified" for the opening. A third white employee also was available. Ownbey was chosen.

On July 15, 1971, Brown filed a second administrative complaint with the GSA Equal Employment Opportunity Office, claiming racial discrimination in the denial of his promotion. An investigative report was prepared. After review, the GSA Regional Administrator determined that there was no evidence of racial discrimination and so informed Brown by letter dated October 19, 1972. This letter also informed Brown that he could request a hearing on his complaint within seven days; but that if he did not make such a request, the determination would become the final agency decision and he would then have the right to appeal the GSA's decision to the Board of Appeals and Review of the Civil Service Commission (CSC), or to file a civil action in the federal district court within 30 days.

Brown requested a hearing. It was held on December 13, 1972 before a complaints examiner of the CSC. Brown was represented by counsel. On February 9, 1973, the complaints examiner issued his findings and recommended decision. He found no evidence of discrimination and recommended that no action be taken on the basis of the complaint.

By letter dated March 23, 1973, received by Brown on March 26, the GSA Director of Civil Rights rendered the final agency decision that the evidence did not support the complaint of racial discrimination. The letter, pursuant to regulations, included a copy of the transcript of the hearing and of the findings and recommended decision of the complaints examiner. The letter also advised Brown of his options: (1) to file an appeal with the Board of Appeals and Review of the CSC within 15 days after receipt of the letter, in which case he could commence a civil action in the federal district court within 30 days after receipt of the Board's decision or

der of such . . . agency . . . on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the . . . agency . . . or with the Civil Service Commission on appeal from a decision or

order of such . . . agency . . . until such time as final action may be taken by [an] . . . agency, . . . an employee . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the . . . agency, . . . shall be the defendant."

180 days after filing the appeal if no decision had been rendered; or (2) to commence a civil action in the federal district court within 30 days after receipt of the letter.[2]

Brown did not file an appeal with the Board. Instead, he commenced the instant action in the district court on May 7, 1973—more than 30 days after receipt of the letter. His complaint named as defendants the GSA and Brown's superiors, Joseph A. Daly, Albert Gallo and Frank A. Lapolla.

Basically, Brown's complaint alleged that he had been denied promotions because of his race.[3] Apparently he sought a promotion to Communications Assistant, GS–9, a supervisory position, and appropriate back pay, although some reference is made in his brief to damages based on discrimination.

■ The original complaint alleged jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1970); Section 717 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16 (Supp. II 1972); 28 U.S.C. § 1331 (1970); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (1970). The complaint also sought to invoke jurisdiction to secure protection of and redress deprivation of rights secured by 42 U.S.C. § 2000e et seq. (1970) and 42 U.S.C. § 1981 (1970). The complaint demanded "such relief as may be appropriate, including injunctive orders, damages, costs, attorney's fees and back pay."[4]

On July 23, 1973, defendants moved to dismiss the complaint on the ground that the court lacked subject matter jurisdiction since Brown had not filed his complaint within 30 days as required by Section 717(c) of the Equal Employment Opportunity Act of 1972 and his action therefore was barred by sovereign immunity.

On September 18, 1973, Brown moved for leave to file an amended complaint. The proposed amended complaint sought to add the CSC and Selbmann, the complaints examiner, as defendants, the original complaint having stated that the CSC had been joined as a party defendant although it was not actually named. The amended complaint also alleged as additional bases of jurisdiction 28 U.S.C. § 1343(4) (1970) and the Tucker Act, 28 U.S.C. § 1346(a) and (b) (1970), and added an allegation that more than $10,000 was in controversy.[5]

In a memorandum opinion filed September 27, 1973, Judge MacMahon held that Brown's action was barred by sovereign immunity and that the district court therefore lacked subject matter jurisdiction. The judge also denied the motion for leave to amend on the ground that the original complaint had been dismissed and the proposed amended complaint did not change the situation.

■ The essential questions thus presented are whether Section 717(c) of the Equal Employment Opportunity Act of 1972 is to be applied retroactively to claims arising before but pending administratively at the time of its enactment; if so, whether that Act pre-empts any other avenue of judicial review; and whether in any event appellant has failed to exhaust administrative remedies.

---

2. The provisions for civil actions are set forth in Section 717(c) of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e–16(c) (Supp. II 1972). See note 1 *supra*.

3. The position of the GSA is that Brown is a somewhat uncooperative employee and therefore has not been promoted. The substantive dispute, however, is not before us on this appeal. Our decision is limited to the threshold jurisdictional questions presented.

4. Relief available under Title VII and the regulations promulgated thereunder would include retroactive promotion with back pay and attorney's fees. 42 U.S.C. §§ 2000e–16(d), 2000e–5(g) (Supp. II 1972); 42 U.S.C. § 2000e–5(k) (1970); 5 C.F.R. § 713.271(b) (1974).

5. Although the original complaint had alleged jurisdiction under 28 U.S.C. § 1331 (1970), no jurisdictional amount was alleged.

## II. LEGISLATIVE HISTORY AND STATUTORY PROVISIONS

We believe that a key to the resolution of these questions may be found in the legislative history and the statutory provisions that emerged.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex or national origin. 42 U.S.C. §§ 2000e–2 to 2000e–3 (1970), as amended (Supp. II 1972). As originally enacted in 1964, however, it did not apply to federal employees. 42 U.S.C. § 2000e(b) (1970). Executive Orders[6] and agency regulations covered their complaints of employment discrimination.[7] In general, the agency itself conducted an investigation and hearing on such complaints. Although the hearing examiner might come from an outside agency, especially the CSC, the head of the employee's agency made the final agency determination. Appeal lay only to the Board of Appeals and Review of the CSC.[8]

No private right of action was provided for federal employees by Title VII until 1972 when Congress amended the Equal Employment Opportunity Act by adding Section 717(c). The legislative history of this section generally evinces a concern that job discrimination had not been eliminated in the federal government. It indicates the dissatisfaction of federal employees with the complaint procedures available. The committee reports show that Congress was not persuaded by testimony of agency officials that legislation was not needed because a private right of action already existed. They note that, even if such right was available, the federal employee faced defenses of sovereign immunity and failure to exhaust administrative remedies; and, even if such defenses were overcome, the relief available, such as back pay or immediate advancement, was in doubt.[9]

It was against this backdrop that Congress in 1972 provided a private right of action for federal employees who were not satisfied with the agency or CSC decisions. Under Section 717(c), an aggrieved employee may commence an action in a federal district court within 30 days after a final order by his agency on a complaint of discrimination based on race, color, religion, sex or national origin, *or* within 30 days after a final order of the CSC on an appeal from such an agency decision, *or* after the elapse of 180 days from the filing of the initial complaint with the agency or of the appeal with the CSC if no decision has been rendered. No appeal need be taken to the CSC. The employee may go directly to court after the agency decision. 42 U.S.C. § 2000e–16(c) (Supp. II 1972), note 1 *supra*.

## III. RETROACTIVITY

Brown's administrative complaint was filed with the GSA in 1971. It was under agency consideration at the time of the enactment of Section 717(c) on March 24, 1972. The question of retroactivity thus presented is whether the section should be applied to claims of discrimination which arose before its effective date but were awaiting final administrative decision at that time.[10]

6. See Exec. Order No. 11478, as amended, Exec. Order 11590, 3 C.F.R. 207 (1974), 42 U.S.C. § 2000e, at 10,297 (1970); Exec. Order 11246, as amended, Exec. Order 11375, 3 C.F.R. 169 (1974), 42 U.S.C. § 2000e, at 10,294–97 (1970).

7. See 5 C.F.R. Pt. 713 (1971).

8. Id.; S.Rep.No.92–415, 92d Cong., 1st Sess. 14 (1971), reprinted in Legislative History of the Equal Employment Opportunity Act of 1972, at 410, 423 (1972) (hereinafter cited as Legislative History).

9. H.R.Rep.No.92–238, 92d Cong., 1st Sess. 23–26 (1971), in Legislative History 61, 82–86; S.Rep.No.92–415, 92d Cong., 1st Sess. 14–17 (1971), in Legislative History 410, 421–26.

10. Cf. Petterway v. Veterans Administration Hospital, 495 F.2d 223 (5 Cir. 1974) (Section 717(c) held not applicable to pre-Act claim of federal employment discrimination because complaint was no longer pending in agency at time of enactment and because complaint was filed beyond 30 day period).

Retroactivity in this context refers only to the claim; the district court complaint in the instant action was filed on May 7, 1973—well after the date of enactment.

All parties to this appeal have sidestepped the retroactivity issue. Appellees deal with the issue briefly in a footnote by stating that they assume retroactive operation in their arguments here although they have argued otherwise elsewhere. Appellant argues that the section is not applicable to the instant action precisely because he did not file his complaint within the required 30 days and that other statutes provide a jurisdictional basis for his action.

The issue of retroactive application of this statute has resulted in a conflict between the circuits. The District of Columbia and Fourth Circuits have held that Section 717(c) applies retroactively to claims pending at the time of its enactment. Womack v. Lynn, 504 F.2d 267 (D.C. Cir. 1974); Koger v. Ball, 497 F.2d 702 (4 Cir. 1974). The Sixth Circuit has held that it does not. Place v. Weinberger, 497 F.2d 412 (6 Cir.), cert. denied, —— U.S. —— (1974). The district courts have gone both ways. Compare, e. g., Ficklin v. Sabatini, 378 F.Supp. 19 (E.D.Pa.1974) (retroactive); Henderson v. Defense Contract Administration Services, 370 F.Supp. 180 (S.D. N.Y.1973) (retroactive); Walker v. Kleindienst, 357 F.Supp. 749 (D.D.C. 1973) (retroactive), with Moseley v. United States, No. 72–380–S (S.D.Cal., filed January 23, 1973) (non-retroactive); Hill-Vincent v. Richardson, 359 F.Supp. 308 (N.D.Ill.1973) (non-retroactive).

The conflict as to retroactivity has turned on whether Section 717(c) is to be viewed as providing a new substantive right for federal employees or whether it merely provides a new remedy for enforcing an existing right.

The pre-1972 right of a federal employee not to be discriminated against is said to be found in Congressional enactments, 5 U.S.C. § 7151 (1970), and Executive Orders. Exec. Orders 11246, 11478, note 6 *supra*. Courts which have adopted the view that Section 717(c) provides a new remedy for enforcing an existing right have held the section retroactive on the grounds that it is remedial, Henderson v. Defense Contract Administration Services, *supra*, or that it is procedural. Koger v. Ball, *supra*.

Courts which have refused to give retroactive effect to the statute, aside from rejecting the view that Section 717(c) merely creates a new remedy for a preexisting right, have held that Congress intended only certain portions of the Equal Employment Opportunity Act to be retroactive for the reason that in Section 14 of the Act, 42 U.S.C. § 2000e–5, at 1,257 (Supp. II 1972), there is a specific provision that amendments to one section of Title VII are to be given retroactive effect, and since there is no reference in Section 14 to Section 717(c), the latter should not be given retroactive effect. See, e. g., Place v. Weinberger, *supra*.

This latter view strikes us as being inconsistent with the underlying principle of Bradley v. School Board of City of Richmond, 416 U.S. 696 (1974). There the Supreme Court held that a statute[11] authorizing a federal court to award attorney's fees in school desegregation cases should have been applied by the Court of Appeals so as to result in the affirmance of the decision of the District Court which had awarded such fees on the basis of its general equity power, since the statute was enacted after the District Court's award but before the Court of Appeals' decision. The rationale of the Supreme Court's decision was stated as follows:

> "We anchor our holding in this case on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or

---

11. Section 718 of the Emergency School Aid Act, Title VII of the Education Amendments of 1972, 20 U.S.C. § 1617 (Supp. III 1973).

there is statutory direction or legislative history to the contrary." 416 U.S. at 711.

We believe that this principle applies here. Neither the statute itself nor the legislative history gives any direction as to whether Section 717(c) should be applied to complaints pending within the agency at the time of its enactment. In light of *Bradley*, we cannot agree with the Sixth Circuit's holding in Place v. Weinberger, *supra,* that Congress by its silence as to all sections of the Act except one intended the other sections to have prospective application only. As the Supreme Court stated in *Bradley*:

> "[E]ven where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect.
>
> Accordingly, we must reject the contention that a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature . . . ." 416 U.S. at 715.

While *Bradley* dealt with a court of appeals' review of a district court's decision, we believe that the underlying principle is applicable to a review by a district court of an agency decision. So far as the statutory language and the relevant legislative history are concerned, retroactive application of Section 717(c) would appear to be appropriate.

■ This does not end our analysis under *Bradley*. We must determine whether application of a change in law to pending claims "would result in manifest injustice". 416 U.S. at 711. In each of the cases where Section 717(c) has been applied retroactively, it was done to *aid* a plaintiff in the prosecution of his complaint. See, e. g., Koger v. Ball, *supra.* In view of the policy of the federal government against discrimination in federal employment and its encouragement of efforts to eliminate such discrimination in

the private and state and local government sectors, such retroactive application of the statute appears sound. If Section 717(c) is held applicable here, however, Brown's claim must fall since he admittedly has failed to comply with its 30 day filing requirement.

We hold that there is no "manifest injustice" in the retroactive application of the statute to Brown's complaint. Twice he was notified in letters from the GSA of the procedure for obtaining court review of the agency decision. Both letters gave notice of the 30 day filing requirement. His counsel have not suggested any excuse for the delay in filing the complaint—either in their briefs, or in oral argument, particularly in response to a direct question by the Court concerning such delay. Instead, his counsel argue that the statute does not apply because Brown has not complied with it.[12] In a sense he is correct in that he cannot take advantage of the statute because he has not complied with its terms. This failure is fatal to Brown's claim, since we hold below that Congress intended Section 717(c) to be the exclusive judicial remedy for federal employee discrimination grievances.

## IV. PRE–EMPTION

■ Appellees argue that, whatever may be the merits of the alternative bases for jurisdiction asserted by appellant, they are pre-empted by Section 717(c). Neither the Act itself nor its legislative history conclusively demonstrates that such pre-emption was intended. Congress enacted Section 717(c) to provide a private right of action for federal employees—a right it believed to have been previously nonexistent or so difficult to enforce as to have been in effect non-existent. The most persuasive argument in favor of pre-emption is that the Act constitutes a waiver of sovereign immunity and as such must be strictly construed.

12. It is interesting to note that both the original complaint and the proposed amended complaint invoked Section 717 as one basis of jurisdiction in the district court.

The doctrine of sovereign immunity forbids suits against the government without its consent. Sovereign immunity in the present context involves not only that of the United States but also that of its officers in performing their official functions. As the Eighth Circuit succinctly put it:

"A suit against an officer of the United States is one against the United States itself 'if the decree would operate against' the sovereign, Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963); or if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration', Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act', Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949). . . ." Gnotta v. United States, 415 F.2d 1271, 1277 (8 Cir. 1969) (Blackmun, J.), cert. denied, 397 U.S. 934 (1970).

The court in *Gnotta* held that demands for promotion and back pay fall within the scope of this immunity as they necessarily involve expenditures from the Treasury and compel the exercise of administrative discretion in an official personnel area. 415 F.2d at 1277. This is precisely the relief demanded in the instant case.

Sovereign immunity would bar prosecution of this action absent an effective waiver. Congress can impose restrictions on its consent to be sued, Battaglia v. United States, 303 F.2d 683, 685 (2 Cir.), cert. dismissed, 371 U.S. 907 (1962), including limitations on the time within which suit must be commenced. United States v. One 1961 Red Chevrolet Impala Sedan, 457 F.2d 1353, 1357 (5

Cir. 1972). The consent Congress has given for the instant type of action is set forth in Section 717(c). Such consent is conditioned on compliance with the 30 day filing requirement.

Statutes waiving sovereign immunity are to be strictly construed. But assuming, as appellant argues, that decisions of the Supreme Court illustrate a more liberal attitude with regard to waivers of sovereign immunity at least where a federal agency is concerned, see Federal Housing Administration v. Burr, 309 U.S. 242 (1940); Kiefer & Kiefer v. Reconstruction Finance Corp., 306 U.S. 381 (1939), we cannot ignore the explicit condition imposed by Congress on a suit such as the instant one. It would wholly frustrate Congressional intent to hold that a plaintiff could evade the 30 day filing requirement "by the simple expedient of putting a different label on [his] pleadings." Preiser v. Rodriguez, 411 U.S. 475, 489–90 (1973).

The instant complaint was filed more than a year after passage of the 1972 Act. Brown had notice of its provisions. He has offered no excuse for failure to comply, nor has he addressed the issue of retroactivity. We find no injustice in requiring compliance with the 30 day filing requirement. On the contrary, to permit suit without compliance with the conditions imposed by Section 717(c) would effectively undermine the strong public policy that requires strict construction of a statute which waives sovereign immunity.[13]

## V. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Finally, even if we were to hold in favor of Brown on the issues discussed above, his claim would fall for failure to exhaust administrative remedies under regulations in effect prior to the 1972 Act. Although he pursued these remedies to the extent of obtain-

13. In view of our holding, we find it unnecessary to consider appellant's claims that jurisdiction can be founded on 28 U.S.C. § 1361 (1970) (mandamus); the Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1970); the Tucker Act, 28 U.S.C. § 1346(a) and (b) (1970); and 42 U.S.C. § 1981 (1970) and 28 U.S.C. § 1343(4) (1970).

ing a final agency decision, he failed to appeal to the Board of Appeals and Review of the CSC. See 5 C.F.R. §§ 713.-231 to .234 (1974), 34 Fed.Reg. 5371 (1969).

Assuming without deciding that exhaustion of federal administrative remedies may not be required in every case of alleged discriminatory federal employment practices, cf. McKart v. United States, 395 U.S. 185 (1969); but see Penn v. Schlesinger, 490 F.2d 700, 707–14 (5 Cir. 1973) (dissenting opinion), rev'd en banc, 497 F.2d 970 (5 Cir. 1974) (adopting panel dissent), there is nothing in the allegations of Brown's complaint which justifies the "premature interruption of the administrative process." McKart v. United States, *supra,* 395 U.S. at 193. The "notions of judicial efficiency" stressed by the Court in *McKart* are particularly applicable here:

> "A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." 395 U.S. at 195.

For aught that appears in the record before us, we cannot say that an appeal to the CSC might not have resulted in granting the relief sought by Brown. Since he did not exhaust his administrative remedies, however, we have been presented with troublesome jurisdictional questions which must be resolved before the substantive issue of discrimination can even be considered. See Penn v. Schlesinger, *supra,* 490 F.2d at 712.

Moreover, it cannot be said here that the administrative remedies available to Brown were inadequate or futile. Cf. McKart v. United States, *supra,* 395 U.S. at 200; Eisen v. Eastman, 421 F.2d 560, 569 (2 Cir. 1969), cert. denied, 400 U.S. 841 (1970). Administrative regulations

in effect at the time Brown filed his complaint in the district court (and which remain in effect) provided for retroactive promotion with back pay if discrimination was found. 5 C.F.R. § 713.271(b) (1974), 37 Fed.Reg. 22,717 (1972). This essentially is the relief sought in his federal court action. Nor does Brown claim that he had no notice of the appellate relief available (he received two letters so informing him), or that his attempts to seek administrative remedies were frustrated. See Penn v. Schlesinger, *supra,* 490 F.2d at 706.

Under the circumstances of this case, we hold that Brown inexcusably failed to exhaust available administrative remedies.

## CONCLUSION

Clearly the federal courts have jurisdiction under Section 717(c) of the Equal Employment Opportunity Act of 1972 to review claims by federal employees of discriminatory employment practices. Brown's failure to comply with the statutory requirements with respect to appealing to the Board of Appeals and Review of the CSC, or by commencing a timely action in the district court, has presented the threshold jurisdictional issues to which this opinion is addressed. We hold that his failure to commence the instant action in the district court within 30 days of the final agency decision is fatal to his complaint since Section 717(c) operates retroactively and preempts any other avenue of judicial review; and that he has failed to exhaust available administrative remedies. The entire process of administrative review by the CSC and of judicial review within the 30 day period for seeking such review makes no sense at all if an employee may simply ignore the statutory requirements.

Affirmed.