449 F.2d 608
 3 ERC 1184, 1 Envtl. L. Rep. 20,607
 Chester McQUEARY, individually, and on behalf of all other
persons similarly situated in the City and County
of Denver, State of Colorado, et al.,
Plaintiffs-Appellants,
v.
Melvin LAIRD, Secretary of the Department of Defense, et
al., Defendants-Appellees.
 No. 708-70.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 21, 1971.
 
 Richard D. Lamm (argued), Gerash & Kaiser, Denver, Colo., for plaintiffs-appellants (Civil Rights-Civil Liberties Research Committee, Cambridge, Mass., with them on the brief).
 Leonard Schaitman (argued), Dept. of Justice, Washington, D. C., with whom James L. Treece, U. S. Atty., L. Patrick Gray, III, Asst. Atty. Gen., Denver, Colo., and Morton Hollander, Justice Dept., Washington, D. C., were on the brief, for defendants-appellees.
 Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Appellants, residents of five counties, including or adjacent to the area known as Rocky Mountain Arsenal in Adams County, Colorado, filed an Amended Complaint, in the nature of a class action, against Appellees Melvin Laird, Secretary of the Department of Defense, Stanley R. Resor, Secretary of the Army, and Lt. Col. John A. Bryan, Commander of the Rocky Mountain Arsenal, praying that the Court "* * * declare that the storage of chemical and biological warfare agents at the Rocky Mountain Arsenal * * * constitutes a deprivation of the rights of the plaintiffs to life, liberty and property without due process of law, all in violation of the Fifth and Ninth Amendments to the Constitution of the United States of America, and contrary to applicable federal statutes * * * and further that this Court enjoin the defendants from storing chemical and biological warfare agents in any shape or manner at the Rocky Mountain Arsenal * * *"
 
 
 2
 The appellees moved to dismiss and/or for summary judgment. On September 11, 1970 the trial court entered its order granting the Motion to Dismiss on the grounds that this is an unconsented suit against the United States and that the court is without jurisdiction over the defendants or the subject matter of the action. This appeal is taken from the Judgment of Dismissal entered September 14, 1970.
 
 
 3
 The amended complaint: (1) challenged the authority of the defendants to store, charge and handle the chemical and biological warfare agents at Rocky Mountain Arsenal; (2) alleged that the warfare agents and munitions were stored, charged and handled in an open, hazardous and careless manner, subject to low flying aircraft, earthquakes and sabotage; and (3) alleged that the defendants had not taken proper safety measures to prevent the hazardous conditions in violation of 10 U.S.C. Sec. 172, thus creating a nuisance. Affidavits and other exhibits were filed by the appellees on the Motion to Dismiss and/or for Summary Judgment.
 
 
 4
 The Rocky Mountain Arsenal was established in 1942 during World War II. At the time of its original construction the area was sparsely populated. It was built to produce toxic chemical agents. Mustard gas was produced there in 1942. G.B. Nerve Gas was produced there in 1953. No warfare agents have been produced there since 1957. When this suit was filed the area around the Arsenal was thickly populated. Nearby Stapleton International Airport had become one of the nation's busiest terminals. Large quantities of chemical and biological warfare agents were stored at the Arsenal. The defendants-appellees filed four affidavits, a report by the National Academy of Sciences and a copy of an F.A.A. letter to airmen. In a nutshell, these exhibits reflect awareness of the dangers asserted and that safety standards and procedures had been adopted on an annual study and inspection basis and complied with.
 
 
 5
 Appellants alleged jurisdiction under Title 10, U.S.C. Sec. 172 (The Military Ammunition Storage Act), 28 U.S.C. Sec. 1361 (mandamus over federal officers, employees and agencies), 28 U.S.C. Secs. 2201 and 2202 (declaratory judgment and further relief), 5 U.S.C. Sec. 702 (aggrieved person entitled to review because of agency action), and 28 U.S.C. Sec. 1331(a) (amount in controversy exceeds $10,000 and arises under the Constitution, laws, or treaties of the United States).
 
 
 6
 We agree with the trial court's judgment that this is an unconsented suit against the United States. No statutes cited and relied upon by the appellants for jurisdiction contain an express waiver of sovereign immunity. The courts shall not entertain an unconsented suit which, while nominally against officers of the United States, is in reality against the Government itself. Hawaii v. Gordon, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).
 
 
 7
 There is no general statutory jurisdiction over actions against federal officers, employees and agencies. Dugan v. Rank, supra, held that notwithstanding lack of express statutory consent, the doctrine of sovereign immunity does not apply if (1) the actions of the officers are beyond their statutory authority; and (2) although acting within the scope of their authority, the powers exercised or the manner in which they are exercised are constitutionally void. Neither exception applies here.
 
 
 8
 Appellants allege that the appellees have violated their statutory duties as officers under 10 U.S.C. Sec. 172(a) and (b). This Act is known as the Military Storage Act. It clearly constitutes a discretionary grant of the sovereign power.
 
 
 9
 "Sec. 172. Ammunition storage board
 
 
 10
 (a) The Secretaries of the military departments, acting through a joint board of officers selected by them, shall keep informed on stored supplies of ammunition and components thereof for use of the Army, Navy, Air Force, and Marine Corps, with particular regard to keeping those supplies properly dispersed and stored and to preventing hazardous conditions from arising to endanger life and property inside or outside of storage reservations.
 
 
 11
 (b) The board shall confer with and advise the Secretaries of the military departments in carrying out the recommendations in House Document No. 199 of the Seventieth Congress. Aug. 10, 1956, c. 1041, 70A Stat. 8."
 
 
 12
 Article I, Section 8, Clause 17 of the Constitution of the United States expressly grants the Federal Government the right to acquire lands for the "Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." In addition to the statutory authority, discretionary in nature, to store chemical warfare agents prescribed under 10 U.S.C. Sec. 172, supra, the Congress in 1969 enacted Public Law 91-121, 83 Stat. 209, Sec. 409, providing safeguards relating to shipment of chemical agents to or from any military installation in the United States.
 
 
 13
 Appellants rely primarily for jurisdiction upon 28 U.S.C. Sec. 1361, supra. This statute was enacted in 1962. The Congress granted Federal District Courts original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to a plaintiff. This court has interpreted that statute as not granting jurisdiction for the purpose of injunctive or declaratory judgment relief. Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364 (10th Cir.1966), cert. denied 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966). This court has held that the 1962 Act relating to mandamus against federal officers, employees and agencies authorizes the court to issue mandamus only to require the exercise of permissible discretion, or to compel performance of ministerial duties. Udall v. Taunah, 398 F.2d 795 (10th Cir.1968); Prairie Band of Pottawatomie Tribe of Indians v. Udall, supra; Smith v. United States, 333 F.2d 70 (10th Cir.1964). In no event, however, may the court direct the manner in which discretionary acts are to be performed nor may it direct or influence the exercise of discretion in making that decision. In Larson v. Domestic & Foreign Corp., supra, 337 U.S. at 695, 69 S.Ct. at 1464 the United States Supreme Court said:
 
 
 14
 "It is argued that an officer given the power to make decisions is only given the power to make correct decisions. If his decisions are not correct, then his action based on those decisions is beyond his authority and not the action of the sovereign. * * * we have heretofore rejected the argument that official action is invalid if based on an incorrect decision as to law or fact, if the officer making the decision was empowered to do so. Adams v. Nagle, 303 U.S. 532, 542, 58 S.Ct. 687, 82 L.Ed. 999 (1938). * * * We hold that if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign * * * the action itself cannot be enjoined or directed, since it is also the action of the sovereign."
 
 
 15
 In Cotter Corporation v. Seaborg, 370 F.2d 686 (10th Cir.1966), this court adopted the rule laid down in Larson v. Domestic & Foreign Corp., supra. That rule was again upheld and applied in Pankey Land & Cattle Company v. Hardin, 427 F.2d 43 (10th Cir.1970), where the Court noted that the appellants' request would require affirmative action on the part of government officials and affect public administration. See also State of New Mexico v. Backer, 199 F.2d 426 (10th Cir.1952); Smith v. United States Air Force, 280 F.Supp. 478 (E.D.Pa.1968); Indiana & Michigan Electric Co. v. Federal Power Com'n, 224 F.Supp. 166 (N.D.Ind.1963); McEachern v. United States, 212 F.Supp. 706 (W.D.S.C.1963), modified in 321 F.2d 31 (4th Cir.1963). And nothing in this section constitutes an implied waiver of the sovereign immunity of the United States. Smith v. United States, supra.
 
 
 16
 Injunctive relief is not authorized under the above Act. Injunction is a remedy to restrain the doing of an injurious act, whereas mandamus commands the performance of a particular duty. If a federal officer does or attempts to do acts which are in excess of his authority or under authority not validly conferred, equity has jurisdiction to restrain him. Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927 (1925); Harper v. Jones, 195 F.2d 705 (10th Cir.1952). In order to sustain jurisdiction under the 1962 Act, it is necessary for the appellants here to allege and plead that the appellees failed or refused to perform a discretionary duty imposed by law. The only act directly controlling here is the Military Storage Act, 10 U.S.C. Sec. 172, supra. The actions taken by appellees are clearly within the ambits of that statute and are anchored firmly to Art. I, Sec. 8, Clause 17 of the United States Constitution. The Dugan v. Rank exceptions to the doctrine of sovereign immunity do not apply here.
 
 
 17
 During oral argument the appellants for the first time indicated that jurisdiction may vest by virtue of the National Environmental Policy Act of 1969, Public Law 91-190, 42 U.S.C. Secs. 4331-4347. This Act generally requires that every federal agency must consider ecological factors when dealing with activities which affect man's environment. We know of no decisions rendered nor do appellants cite us to any which recognize standing to invoke jurisdiction under this Act challenging a military or defense facility as hazardous to human health and safety "created by environmental pollution". 42 U.S.C. Sec. 4393. We observe that the functions vested by law in specific departments or agencies transferred to the Environmental Protection Agency, do not include functions involving the Department of Defense or the Secretary of the Army. See Reorganization Plan No. 3 of 1970 (Dec. 2, 1970), 35 F.R. 15623. We do not intend to imply that the federal officers and agencies charged with the administration and operation of arsenals are exempt from the Act. The statute requires that all agencies of the federal government shall report in detail and consult with the Council on Environmental Quality. 42 U.S.C. Sec. 4332. The Act requires such agency disclosure as will alert the President, the Council, the public, and the Congress to all possible environmental consequences of proposed agency action. Thus, in National Helium Corporation v. Morton, No. 71-1369 (Oct. 4, 1971) this court upheld a restraining order prohibiting the Secretary of the Interior from terminating a contract for purchase of helium in light of the Secretary's failure to observe the statutory requirements of NEPA that environmental consequences of contemplated action be detailed. 42 U.S.C. Sec. 4332. Under the Helium Act, one of the justifications for government purchase of helium is conservation of this natural resource. It was uncontradicted that the contract termination in that case would result in helium being vented into the atmosphere when the natural gas was consumed as fuel. That case did not involve disclosures relating to a military-defense establishment or national security.
 
 
 18
 Public disclosure relating to military-defense facilities creates serious problems involving national security. We hold that NEPA does not create substantive rights in the plaintiffs-appellants here to raise the environmental challenge in regard to the Rocky Mountain Arsenal. In its proprietary military capacity, the Federal Government has traditionally exercised unfettered control with respect to internal management and operation of federal military establishments. Cafeteria and Restaurant Workers Union, Local 473, A.F.L.C.I.O. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). Upon cession by a state to the national government of jurisdiction over property to be used for military purposes, the Congress has exclusive jurisdiction to legislate in respect thereto. Howard v. Commissioners, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953); Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991 (1892); Murphy v. Love, 249 F.2d 783 (10th Cir.1957), cert. denied 355 U.S. 958, 78 S.Ct. 544, 2 L.Ed.2d 533 (1958). The challenges raised by the appellants in this case fall within that narrow band of matters wholly committed to official discretion which, in recognition of the needs involved in national security, do not blend with tests in an evidentiary hearing.
 
 
 19
 We affirm.