**Antonio J. BACA, Individually and on behalf of all others similarly situated, Plaintiff,**

**v.**

**Earl BUTZ, Secretary of the United States Department of Agriculture, et al., Defendants.**

**Civ. No. 10470.**

United States District Court,
D. New Mexico.

May 21, 1974.

Ray M. Vargas, Albuquerque, N. M., for plaintiff.

Victor R. Ortega, U. S. Atty., W. R. Hughes, Asst. U. S. Atty., Albuquerque, N. M., for defendants.

## MEMORANDUM OPINION

BRATTON, District Judge.

Plaintiff Antonio Baca brings this action on behalf of himself and all others similarly situated under the Equal Employment Opportunity Act of 1972, § 11, 42 U.S.C. § 2000e–16, and 42 U.S.C. § 1981. Baca claims that the Soil Conservation Service has denied him promotions because of allegedly racially discriminatory employment practices and also contends that such practices have similarly denied other Spanish-American citizens their rights under the law. Jurisdiction has been invoked pursuant to 28 U.S.C. §§ 1343(4), 1361, 2201, and 2202. Defendants herein are Earl Butz, Secretary of Agriculture; Kenneth Grant, Administrator of the Soil Conservation Service; Marion Strong, New Mexico State Conservationist; and Robert Bishop, Area Conservationist. This matter comes before the Court presently upon the Motion of all defendants to dismiss.

The sole question for consideration is whether the 1972 amendments to Title VII of the Civil Rights Act, specifically those in Section 717, 42 U.S.C. § 2000e–16, providing a federal employee (or job applicant) aggrieved by agency action in conjunction with a complaint of unlawful discrimination the right to file a civil action in federal district court, require a judicial trial de novo.

Plaintiff filed his complaint with the Department of Agriculture in August, 1972, and an investigation of the allegations was thereafter conducted by the agency resulting in a finding of no discrimination on January 23, 1973. Having been advised by the agency of his right to a hearing, plaintiff requested and obtained a hearing before a complaints examiner (an employee of a different agency) on May 22 and 23, 1973,

who recommended a finding of no discrimination to the agency. The Director of Equal Employment Opportunity of the Department of Agriculture thereupon adopted the examiner's findings in a decision announced August 1, 1973. Subsequently, plaintiff perfected a timely appeal to the Board of Appeals and Review of the Civil Service Commission (hereinafter "CSC") which upheld the agency decision on October 30, 1973, prompting plaintiff to file this civil action pursuant to the statutory amendments.

Congress enacted the 1972 amendments in an effort to redress a major defect in the enforcement mechanisms of the civil rights laws. Although the Civil Rights Act of 1964 had afforded employees in the private sector the right to commence an action in federal district court in order to vindicate rights deprived by unlawful employment discrimination, it conspicuously neglected to provide similar relief for employees of the federal government. Since the Act did not reach such discrimination by the federal government, federal employees placed primary reliance upon a series of executive orders declaring it to be the policy of the United States to insure equal employment opportunities for all employees and to prohibit unlawful discrimination.[1] Only in 1966 did this federal non-discrimination policy attain statutory significance by the enactment of 5 U.S.C. § 7151. Although these provisions barred discrimination in employment by the United States, an aggrieved federal employee had recourse only to his employing agency and the CSC for relief. The key to the courthouse door proved an elusive phantom, being deprived a federal grievant by a consistently rigid application of the sovereign immunity and exhaustion doctrines by the courts.

Not only was relief in the federal courts unavailable, but the established remedial framework offered federal employees contained several defects which in the opinion of Congress merited prompt corrective action. Specifically, Congressional dissatisfaction was engendered by the extreme complexity of the complaint procedure, the possibility of agency bias in adjudication, and the seeming insensitivity of the CSC in recognizing the often subtle disguises of employment discrimination. Congress also noted a growing skepticism among federal employees concerning the quality of the remedial process.[2]

Notwithstanding the rather unsatisfactory historical experience with the agency—CSC composite, Congress, in the recent amendments, left the basic structure intact, retaining primary reliance upon the administrative process to rectify employment discrimination in the federal sector. The scheme agreed upon by Congress in the final legislative draft reflected the operation of several compromises. Congress sought to eradicate certain endemic structural infirmities of the prior framework by the effectuation of substantive modifications in the grievance procedure. A straightforward complaint procedure was initiated, the CSC was ordered to implement affirmative action programs in each agency and to overhaul its employment qualification and testing procedures to eliminate the root causes of discrimination, and a number of measures were authorized to expand CSC expertise in pinpointing discrimination and recognizing the potential dangers of even facially neutral employment practices. See 5 C.F.R. Part 713 (1973). Finally, and the mat-

---

1. See Exec. Order No. 11246, 3 C.F.R. 173 (Supp.1973), 42 U.S.C. § 2000e and Exec. Order No. 11478, 3 C.F.R. 214 (Supp.1973), 42 U.S.C. § 2000e. These Executive Orders served to implement the decision in Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L. Ed. 884 (1954), where the Supreme Court initially recognized that the Fifth Amendment's due process clause prohibited invidious discrimination by the federal government.

2. See 118 Cong.Rec. S 2278–2287 (daily ed. Feb. 22, 1972) ; S.Rep.No.415, 92d Cong., 1st Sess. (1971) ; H.R.Rep.No.238, 92d Cong., 1st Sess. (1971).

ter of concern here, § 717(c) of Title VII armed a federal employee with the right to file a "civil action" in federal district court if aggrieved by adverse rulings or action in the administrative process.

After analyzing the legal presentations of the parties, the court concurs with Judge Gesell's conclusion that the amendments do not mandate a trial de novo in all circumstances. See Hackley v. Johnson, 360 F.Supp. 1247 (D.D. C.1973).[3]

After a declaration in § 717(a) that all personnel actions affecting employees or applicants for federal employment "shall be made free from any discrimination based on race, color, religion, sex, or national origin," subsection (b) of the Act entrusts the CSC with enforcement responsibility of the Act's provisions. Subsection (c), the section in dispute presently, then provides:

"(c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action

may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."

Subsection (d) follows pronouncing that: "The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder."

The provisions referred to in subsection ·(d) set forth the prescribed procedures to be employed when a private employee files a civil action in district court after Equal Employment Opportunity Commission conciliation efforts have failed to resolve a discrimination complaint short of litigation. Section 2000e–5(f)(4) declares that a district judge should hear and determine the case while § 5(f)(5) mentions that the case should be scheduled for hearing or for trial at the earliest practicable date. There can be no question whatsoever that these provisions warrant an evidentiary hearing or trial in federal court in a private discrimination suit.[4] Plaintiff contends that, ipso facto, § 2000e–16(d) mandates that these same provisions apply to all civil actions brought by aggrieved federal employees.

Although initially one might read the statute as compelling the district judge to conduct a trial as a matter of course whenever a federal grievant files a civil action, a closer analysis reveals that the § 2000e–5(f)–(k) procedures govern a

---

3. Cf. Also denying an automatic trial de novo: Johnson v. United States Postal Service, 364 F.Supp. 37 (N.D.Fla.1973); Handy v. Gayler, 364 F.Supp. 676 (D.Md.1973); Tomlin v. United States Air Force Medical Center, 369 F.Supp. 353 (S.D.Ohio 1974); Requiring a trial de novo: Thompson v. United States Dept. of Justice, BNDD, 360 F.Supp. 255 (N.D.Cal.1973), modified in part, 372 F.Supp. 762 (N.D.Cal.1974); Henderson v. Defense Contract Admin. Serv. Reg. N.Y., 370 F.Supp. 180 (S.D.N.Y.1973).

4. Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir. 1971); Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136 (5th Cir. 1971); Flowers v. Local 6, Laborers International Union of North America, 431 F.2d 205 (7th Cir. 1970); Fekete v. United States Steel Corp., 424 F.2d 331 (3rd Cir. 1970); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

§ 2000e–16(c) civil action only "as applicable." It seems apparent that this qualifying phrase signaled Congressional awareness of the substantial differences existing in the procedural frameworks of the two schemes and of the different circumstances in which discrimination cases would reach the district court under the different statutes.

A private discrimination complaint initiated under § 2000e–5 is the subject of very different treatment in the agency process than one initiated under the recent amendments. Under the § 2000e–5 (EEOC) procedures, the EEOC possesses a limited role, having only the power to investigate a grievant's complaint, make a finding of reasonable cause to believe discrimination has occurred, attempt conciliation through informal processes of negotiation if reasonable cause is found, and if no settlement can be reached, either file itself or advise the employee to file a federal civil action.

To facilitate its investigation, 29 C.F. R. § 1601.15 (1973) empowers the EEOC to subpeona witnesses and relevant documents and records while § 1601.16 states that the Commission may require the testimony of witnesses under oath and the taking of transcripts. Neither the statutes nor the promulgated regulations confer upon the EEOC even a scintilla of remedial authority. Thus, it can be seen that Congress chose to rely upon informal means to resolve discrimination complaints in the private sector, and accordingly, the courts assumed total roles in the realms of factfinding and statutory enforcement.

In contrast however, the administrative procedures under the 1972 amendments and its accompanying regulations dictate a very different format, with only the investigatory state bearing resemblance to the EEOC procedures. After an investigation has been conducted and informal adjustment measures have failed, the agency notifies the grievant of his right to a hearing. The hearing, conducted before an impartial complaints examiner, is a full evidentiary proceeding in which both parties possess the right of cross-examination, and all testimony is recorded. The examiner must make formal findings of fact and then submit his recommended disposition, including recommended remedial action when appropriate, to the head of the agency who subsequently must either adopt, reject, or modify the examiner's decision by a written memorandum and order appropriate corrective measures if necessary. If the complainant does not prevail at this juncture, he may appeal of right to the CSC which conducts a traditional review of the administrative record to determine the substantiality of the findings. See 5 C. F.R. § 713.234 (1973). The CSC similarly possesses full remedial powers. After this scheme of occurrences, the cause reaches the district court for consideration.

Congress obviously contemplated a factfinding procedure within the agency, under rules to be prescribed by the CSC, with review as a matter of right. It does not seem reasonable that Congress would then command the district court to commence anew upon a tabula rasa. Such an abandonment of the traditional administrative process cannot be supposed without a clear directive from Congress. Requiring an automatic de novo trial in federal court would effectively negate the operation of agency expertise and would unduly prolong the time required for final resolution of a complaint. As Judge Gesell observed in *Hackley, supra,* at 1252:

> "Congress wanted prompt and consistent decisions in these discrimination matters. A trial de novo does not accomplish this but rather works in the opposite direction for a wholly new record must be made and opportunity for reasonable discovery provided. Moreover, it is difficult, as the present cases illustrate, to differentiate between pure discrimination claims and the underlying intricacies of civil service regulations governing job qualification, selection for promotion, training and the like. The Commission's growing expertise in civil

rights matters, coupled with its pre-eminent expertise in these latter areas, emphasizes that an automatic trial de novo will not serve the laudable purpose of the Act."

Since the § 717 procedures contemplated the development of a complete factual record with opportunity for review before the federal court would consider the matter, Congress realized that the § 706 scheme would operate only in certain instances, i. e., "as applicable."

Although contradictory inferences may be drawn from certain portions of the legislative history surrounding the Act, considered in its entirety, it supports the conclusion reached herein. Primarily concerned over the fact that federal employees, unlike their counterparts in the private sector, could not obtain judicial scrutiny of their complaints, Congress chose to provide them with equal rights of access to the federal courts.[5]

Discussing the standard of review to be applied by the federal courts to the agency decision, an analysis of the bill submitted by Senator Williams, Chairman of the Committee on Labor and Public Welfare, stated:

> "An important adjunct to the strengthened Civil Service Commission responsibilities is the statutory provision of a private right of action of *review* of the agency proceedings in the courts by Federal employees who are not satisfied with the Agency or Commission decision.
>
> " * * * Aggrieved employees or applicants will also have the full rights of *review* available in the courts."[6] (emphasis added)

Plaintiff relies heavily upon another statement of Senator Williams as indicating that a de novo proceeding was contemplated. The Senator commented:

> "Finally, written expressly into the law is a provision enabling an ag-

grieved Federal employee to file an action in U. S. District Court for a *review of the administrative proceeding record* after a final order by his agency or by the CSC, if he is dissatisfied with that decision. Previously, there have been unrealistically high barriers which prevented or discouraged a Federal employee from taking a case to court. This will no longer be the case. There is no reason why a Federal employee should not have the same private right of action enjoyed by individuals in the private sector, and I believe that the committee has acted wisely in this regard." (emphasis added)[7]

These statements of the Senator clearly reveal that the "civil action" contemplated would be a review of the record developed in the administrative process and would not be a de novo proceeding. Although plaintiff contends that the statement means that both classes of grievants should have identical rights, the granting of a trial de novo to federal employees would invest them with substantially greater rights than their private counterparts possess. Considering the last quoted sentence in context with the Senator's other comments, it seems apparent that he was primarily concerned with providing accessibility to the federal courts to federal plaintiffs and believed that the new legislation would guarantee them equal access to district court by providing the same right to file a civil action as of right as was already afforded private complainants.

However, instances will exist in which a federal court evidentiary hearing will be required and where the "as applicable" language of § 717(d) will therefore necessitate the application of the § 706(f–k) procedures. As an example, whenever the agency has failed to hold a timely hearing after request, and a proper appeal has subsequently been

---

5. See 118 Cong.Rec. S. 2278–2281, 2287 (daily ed. Feb. 22, 1972) ; 119 Cong.Rec. S 1219 (daily ed. Jan. 23, 1973) (remarks of Senator Cranston). See also 1972 U.S.Code Cong. & Admin.News p. 2179 [reprint of H.

R.Conf.Rep.No.899, 92d Cong., 2d Sess. (1972)], at 2185, para. 5.

6. 118 Cong.Rec. S 2281 (daily ed. Feb. 22, 1972).

7. Id. S 2280.

taken, the trial court will then be compelled to develop a factual record and decide the case in the first instance.

What is required by the Act is a review and analysis of the agency record by the district court. In some instances and for cause shown, the plaintiff might be allowed to supplement the file with additional evidence relevant to the case or be given an opportunity to demonstrate deficiencies in the record which would warrant remand for further administrative consideration. When it appears to the satisfaction of the court that the factual record is complete, the district judge should then review the entire record.

Notwithstanding the fact that the court has determined that 42 U.S.C. § 2000e–16 does not mandate a trial de novo in all circumstances, nor compel one at this juncture, dismissal of the complaint as urged by the defendants is not appropriate here. Further disposition of the cause shall await the proper presentation of the administrative record to the court. Defendant's Motion to dismiss will be denied.