Roy A. ARCHULETA, and all others similarly situated, Plaintiffs,

v.

Howard H. CALLAWAY, Secretary of the Army, et al., Defendants.

Civ. A. No. 74–M–213.

United States District Court,
D. Colorado.

Nov. 20, 1974.

Remigio Pete Reyes, Mexican American Legal Defense and Educational Fund, Denver, Colo., for plaintiffs.

James L. Treece, U. S. Atty., and Gary M. Jackson, Asst. U. S. Atty., Denver, Colo., George A. Stohner, Office of Judge Advocate Gen., Dept. of Army, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

MATSCH, District Judge.

The matter before the Court is Plaintiff's motion to certify this case as a class action. Roy A. Archuleta alleges discrimination in promotions, upgrading, and reductions in force on the part of the Pueblo Army Depot, against himself and others similarly situated.

The First Claim for Relief relates to failure to engage in competitive bidding in "detailing" a non-minority employee to a WG–12 grade position to the exclusion of plaintiff and his class. The Second Claim for Relief alleges a pattern and practice of discrimination in violation of Executive Order 11478. The Third Claim for Relief alleges discrimination in violation of the Civil Rights Act of 1870, 42 U.S.C. § 1981; the Civil Rights Act of 1964 as amended, 42 U.S. C.A. § 2000e et seq., and the "equal protection" and "due process" clauses of the United States Constitution. The Fourth Claim for Relief alleges reprisal and retaliation against plaintiff and his class in violation of Title VII and the constitutional and statutory bases previously invoked. The Fifth Claim for Relief states that defendants have failed to develop an affirmative action plan as required by Title VII. Plaintiffs have prayed for declaratory relief under 28 U.S.C. §§ 2201, 2202; for mandamus under 28 U.S.C. § 1361; and for damages, both compensatory and punitive.

Both sides have briefed the questions of (1) whether access to federal courts is limited to 42 U.S.C.A. § 2000e–16 for enforcement of civil rights claims against a federal employer; (2) the proper scope of review; (3) the general propriety of proceeding as a class; and (4) whether federal employees may maintain a class action under Title VII. Although the motion before the Court is limited to certification of the class, this question necessarily involves the four issues briefed. If access is limited to Title VII and review of the record before the Civil Service Commission, a class action could not be maintained.

Title VII actions against private employers must be distinguished from this Title VII action against a federal employer. The 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. as originally enacted, did not apply to federal employees. Since 1966 it had been the stated policy of the United States to prohibit discrimination, 5 U.S.C. § 7151, but no remedy was provided for enforcement. Executive Orders: 11246, 3 C.F. R. 169 (1974), 42 U.S.C.A. § 2000e (1974); 11374, 32 Fed. Reg. 14303 (1967); and 11478, 3 C.F.R. 207 (1974), 42 U.S.C.A. § 2000e (1974) required the heads of each executive department or agency to establish and maintain affirmative action programs of equal employment under the supervision of the Civil Service Commission [hereinafter CSC], 40 Geo.Wash.L.Rev. 824, 853 (1972). But as stated in Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied 397 U.S. 934, 90 S.Ct. 941, 25 L. Ed.2d 115 (1970):

> None of the executive orders or regulations which the complaint cites purports to confer any right on an employee of the United States to institute a civil action for damages against the United States, in the event of their violation, even if it should be established that plaintiff's failure to have been promoted . . . was in fact due to discrimination . . . .
> Id. 415 F.2d at 1278.

42 U.S.C. § 2000e–5 gives the Equal Employment Opportunity Commission [hereinafter EEOC], the power to prevent unlawful employment practices, and provides that the complainant may file charges with the EEOC within 180 days of the alleged unfair employment practice, or the EEOC may initiate charges on its own. An investigation is conducted and the EEOC determines whether there is reasonable cause to believe the charge is true. The EEOC may dismiss the complaint, achieve conciliation with

the employer, or file a suit against the employer in United States District Court. If the EEOC dismisses, or fails to file a civil action within 180 days of the complaint, the complainant may institute his own action against the employer. The United States District Courts are granted original jurisdiction over actions filed by the EEOC or by the individual, 42 U.S.C.A. § 2000e–5(f)(3) (1974).

In 1972, Title VII of the Civil Rights Act of 1964 was amended to include federal employees within the coverage of the Act, 42 U.S.C.A. § 2000e–16 (1974) and to enlarge the authority of the Civil Service Commission:

> . . . the Civil Service Commission shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. . . . The head of each such department, agency, or unit shall comply with such rules, regulations, orders and instructions . . . . 42 U.S.C.A. § 2000e–16 (b).

§ 2000e–16(c) creates a civil action which must be filed by complainant within thirty days after notice of final agency action, or final action on an appeal to the CSC, or after 180 days from filing the charge if no such final action has been taken. The scope of this action is not defined, however, except to state that "The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder." 42 U.S.C.A. § 2000e–16(d) (1974). Nothing in these subsections gives any indication of the proper scope of judicial review.

A private employee suing under § 2000e–5 is entitled to a full trial because there has been no fact finding procedure, the only administrative action being the EEOC determination of no reasonable cause, or the failure of the Commission to act on the complaint. However, under its statutory authority, the CSC has promulgated regulations which provide for thorough administrative review of the complaints of federal employees. 5 C.F.R. § 713.201–713.401 (1974). These regulations provide comprehensive review of the complaint within the agency and a right of appeal to the CSC. They provide for a hearing before a complaints examiner employed outside of the affected agency, who is required to take evidence with a verbatim transcript of the hearing and to make findings with a recommendation for a decision. Upon appeal of the decision of the agency head, the CSC may reopen and reconsider any previous decision when the party requesting reopening submits written argument which tends to establish that new and material evidence is available; or that the previous decision involves an erroneous interpretation of law or regulation; or a misapplication of established policy; or that the previous decision is of a precedential nature. It is only at the conclusion of this lengthy and compulsory process that a federal employee may file a complaint in this Court.

In support of the contention that this Court should proceed *de novo* on this complaint, plaintiff relies upon Henderson v. Defense Contract Administration Region, 370 F.Supp. 180 (S.D.N.Y. 1973); Jackson v. United States Civil Service Commission, 379 F.Supp. 589 (S.D.Tex., 1973); Griffin v. United States Postal Service, 7 EPD ¶ 9133 (M.D.Fla.1973); Williams v. Mumford, 5 EPD ¶ 8482 (D.D.C.1973); and Carreathers v. Alexander, 7 EPD ¶ 9379 (D. Colo.1974).

In *Henderson, supra,* plaintiff, a specialist for Defense Contract Administration Services (DCASR), alleged that defendant had engaged in racially discriminatory practices against him. Judge

Pierce first discussed whether § 2000e–16(c) should have retroactive effect since the acts alleged occurred prior to the 1972 amendment. Acknowledging that courts have disagreed sharply on this issue, the Court held that § 2000e–16(c) is remedial in nature and therefore should be given retroactive effect. The Court also held that plaintiff was entitled to a trial *de novo*. This decision was based on the conclusion that private employees and federal employees should be entitled to the same procedure. The court quoted from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 799, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) "Court actions under Title VII [initiated by private employees] are de novo proceedings . . . a Commission['s] 'no reasonable cause' finding does not bar a lawsuit in the case." From this the court concluded "we feel that the rationale underlying these decisions is equally applicable to the case herein [to a federal employee]" *Henderson, supra* 370 F.Supp. at 184. The court relied on one case which actually dealt with a federal employee, Thompson v. United States Department of Justice, Bureau of Narcotics and Dangerous Drugs, 360 F. Supp. 255 (N.D.Calif.1973), in which Judge Wollenberg initially determined that a trial *de novo* was required. This case was later reversed by the same Judge holding "Since then, the Court has had the benefit of three other decisions which have considered the same question and held that a trial *de novo* is not necessarily required in district court actions under § 2000e–16. Handy v. Gayler, 364 F.Supp. 676 (D.Md.1973); Williams v. Mumford, Civ. No. 1633–72 (D.D.C. filed August 20, 1973); Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973)." 372 F.Supp. 762 (N.D.Calif. 1974).

Plaintiffs also rely on Jackson v. United States Civil Service Commission, *supra*. The court in *Jackson* held that Congress had intended to change the procedure for federal employees to give them the same remedies as private employees, and that denial of a trial *de novo* would place too much power with the Civil Service Commission, the agency whose inaction precipitated the 1972 amendments. The court also observed that Congress could have specified limited judicial review, but instead provided that a complainant "may file a civil action as provided in section 2000e–5" [covering private employees originally], 42 U.S.C.A. § 2000e–16(c) and (d) "The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder". Thus it was concluded that Congress intended equal procedures by utilizing some of the same time periods and provisions to govern civil suits by both classes of employees.

The most widely quoted opinion denying trial *de novo* of § 2000e–16 actions is that of Judge Gesell in Hackley v. Johnson, *supra*, referred to in both *Thompson* and *Jackson, supra*. In examining the legislative history to find Congress' unstated intent, the Court discussed the past dissatisfaction with the CSC's handling of discrimination claims, and the bars to effective judicial review by the doctrines of exhaustion of remedies and sovereign immunity. The strengthening of the CSC, and the granting of authority to promulgate rules binding on other agencies, were considered evidence of a Congressional intention to rely heavily on the CSC as the primary source of relief.

The reasoning in *Hackley* has been followed in a number of cases. Baca v. Butz, 376 F.Supp. 1005 (D.N.M.1974) is an example. Baca brought an action against the Secretary of the Department of Agriculture on behalf of himself and other Spanish American employees, alleging racially discriminatory employment practices. After analyzing the statute and regulations, and commenting on the legislative history, the court held "What is required by the Act is a review and analysis of the agency record by the district court." *Id.* at 1010. The

court did not address itself to the class action question in the reported opinion.

Trial *de novo* has been denied in a majority of the cases where the issue has been raised. See Cates v. Johnson, 377 F.Supp. 1145 (W.D.Pa.1974); Spencer v. Schlesinger, 374 F.Supp. 840 (D.D.C.1974); Tomlin v. United States Air Force Medical Center, 369 F.Supp. 353 (S.D.Ohio 1974); Johnson v. United States Postal Service, 364 F.Supp. 37 (N.D.Fla.1973); Handy v. Gayler, 364 F.Supp. 676 (D.Md.1973).

■ Upon consideration of the exhaustive analyses set forth in these cases, I am persuaded that a trial *de novo* is not required in a civil action by a federal employee arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C.A. § 2000e–16(c) (1974).

■ That conclusion necessarily determines plaintiff's motion to certify the class. Administrative proceedings under Title VII are individual in nature and therefore not susceptible to class treatment. The review thereof must also be limited to the individual as there are no records before the Court of the other members of the class. Therefore, a class action cannot be maintained under Title VII. This conclusion was also reached by Judge Northrup in Handy v. Gayler, *supra*:

> The complaint is filed as a class action and seeks relief for all persons aggrieved by unlawful employment practices at NSA. The investigation conducted by the appeals examiner, and upon which this Court's review would be based, was limited to specific acts of discrimination against plaintiff Andrew Handy. Were this court to permit plaintiff to proceed, it would entail in essence a trial *de novo* in order to create a record on the allegations of discrimination against the class.

(*Handy, supra* at 679)

The Court concurs with this reasoning and the conclusion that a class action cannot be maintained by a federal employee under Title VII.

■ Plaintiffs' have also alleged jurisdiction under 42 U.S.C. § 1981; 28 U.S.C. § 1361; 28 U.S.C. § 2201; the equal protection clause of the Fourteenth Amendment; and the due process clause of the Fifth Amendment of the Constitution. If a jurisdictional base exists under the above provisions invoked, the Court would have to decide the motion to certify the class for purposes of actions under these provisions.

The equal protection clause of the Fourteenth Amendment cannot possibly support jurisdiction against federal defendants, because it applies only to states. The Court is aware of Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) and Miller v. Laird, 349 F.Supp. 1034 (D.D.C.1972) which hold the concept of equal protection to be incorporated into the due process clause of the Fifth Amendment, but the clause itself is inapplicable to the instant case.

The due process clause of the Fifth Amendment does not confer jurisdiction for a suit against the United States. Plaintiffs might conceivably urge that the Fifth Amendment should be interpreted to give jurisdiction directly as was the Fourth Amendment in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), but the Court is aware of no cases which have so held, and such a result would be an unwarranted extension of that decision.

The Tenth Circuit has held that 28 U.S.C. § 2201 (1970), The Declaratory Judgment Act "is not a jurisdictional statute, but is remedial only; any jurisdiction over the controversy must be found in other statutes conferring jurisdiction" Chandler v. O'Bryan, 445 F.2d 1045 (10th Cir. 1971) citing Skelly Oil v. Phillips Petroleum, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Thus plaintiffs have not been afforded jurisdiction by this statute.

Plaintiffs have also attempted to find a jurisdictional base in 28 U.S.C. § 1361 (1970) providing for mandamus of a federal employee to perform a duty owed plaintiff. The Tenth Circuit has taken a strict view of § 1361:

> The Congress granted Federal District Courts original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to a plaintiff. This court has interpreted that statute as not granting jurisdiction for the purpose of injunctive or declaratory judgment relief . . . . and authorizes the court to issue mandamus only to require the exercise of permissible discretion, or to compel performance of ministerial duties. . . . In no event, however, may the court direct the manner in which discretionary acts are to be performed nor may it direct or influence the exercise of discretion in making that decision. (McQueary v. Laird, 449 F.2d 608 (10th Cir. 1971) [citations omitted]).

The court in *McQueary* also discussed the Dugan v. Rank, 372 U.S. 609, 83 S. Ct. 999, 10 L.Ed.2d 15 (1963) exceptions to sovereign immunity: "(1) the actions of the officer are beyond their statutory authority; and (2) although acting within the scope of their authority, the powers exercised or the manner in which they are exercised are constitutionally void." *Id.* 449 F.2d at 610. Discrimination may, of course, be a constitutional issue, but defendant's finding that no discrimination exists, if supported by substantial evidence and if not arbitrary or capricious, is not an unconstitutional exercise of discretion or an ultra vires act. There is dicta in the majority opinion in Penn v. Schlesinger, 490 F.2d 700 (5th Cir. 1973) rev'd on other grounds, 497 F.2d 970 (5th Cir. 1974) that any discriminatory action by a federal employer is *per se* ultra vires. This case was later reversed with directions to dismiss the action for failure to exhaust administrative remedies.

Plaintiff has also sought jurisdiction in 42 U.S.C. § 1981, originally enacted as the Civil Rights Act of 1870, which provides: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." Even Penn v. Schlesinger, which tried to find jurisdiction under the ultra vires exception, acknowledged that "Section 1981 does not constitute a waiver of sovereign immunity by the federal government. It is well settled that a waiver of sovereign immunity must be specific and explicit . . . Since Section 1981 contains no explicit waiver of sovereign immunity by the federal government but merely a general prohibition of discrimination on racial grounds, it does not constitute a waiver of this immunity." *Penn, supra* at 703. The court also cited Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972) as holding injunctions against the United States to be similarly barred by sovereign immunity.

■ It must be concluded that the doctrine of sovereign immunity precludes any action by a federal employee against his supervisors acting in their official capacity except within the framework of Title VII.

Upon the foregoing, it is

Ordered that plaintiff's motion to certify the class is denied.