**Antonio J. BACA, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Earl BUTZ, Secretary of the United States Department of Agriculture, et al., Defendants.**

**Civ. No. 10470.**

United States District Court,
D. New Mexico.

May 8, 1975.

Ray M. Vargas, Albuquerque, N. M., for plaintiff.

Victor R. Ortega, U. S. Atty., W. R. Hughes, Asst. U. S. Atty., Albuquerque, N. M., for defendants.

MEMORANDUM OPINION

BRATTON, District Judge.

This is an action by an employee of the Soil Conservation Service against the government brought on behalf of himself and all others similarly situated alleging discriminatory employment practices. The plaintiff seeks declaratory, monetary, and equitable relief. Jurisdiction of the court is invoked pursuant to 42 U.S.C.A. §§ 1981, 2000e et seq., and 28 U.S.C.A. §§ 1343(4), 1361, 2201 and 2202.

In his complaint the plaintiff described his proposed class as Spanish Surnamed Americans who have been or will be discriminated against in employment by the Soil Conservation Service due to their national origin, Mexican-American. He now maintains that he is a representative of the class known as Mexican-Americans who as such constitute a race on which basis they are discriminated against.

Defendant Earl Butz is presently Secretary of the United States Department of Agriculture; defendant Kenneth Grant is the Administrative Director and Chief of the Soil Conservation Service; defendant Marion Strong is the New Mexico State Conservationist; and defendant Robert D. Bishop is the New Mexico Area Conservationist for Las Cruces.

I.

This matter comes on for consideration of plaintiff's motion to reconsider the court's opinion order of May 21, 1974. By previous memorandum opinion, Baca v. Butz, 376 F.Supp. 1005 (D.N.M.1974), this court determined that a trial de novo is not automatically available in all claims by federal employees under the Equal Employment Opportunity Act of 1972, 42 U.S.C.A. § 2000e–16, but that such a hearing should be afforded a plaintiff only when review of the administrative record demonstrates deficiencies in the administrative process such that a de novo hearing would be appropriate. This conclusion is in accord with a more recent opinion of this circuit, Salone v. United States, 511 F.2d 902 (10th Cir. 1975). The plaintiff now seeks to obtain the trial de novo he has been denied under 42 U.S.C.A. § 2000e–16 by reasserting his claim under the Civil Rights Act of 1866, 42 U.S.C.A. § 1981.

Section 1981, which is directed at only racially motivated discrimination,[1] provides in relevant part as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . . .

1. Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Georgia v. Rachel, 384 U.S. 780, 791, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); Snowden v. Hughes, 321 U.S. 1, 5, n. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Hague v. C. I. O., 307 U.S. 496, 509 (1939); Buchanan v. Warley, 245 U.S. 60, 78–79, 38 S.Ct. 16, 62 L.Ed. 149 (1917).

The phrase "all persons within the jurisdiction of the United States" as used in this section is designed to define that large class of persons who come within the protection of the statute.[2] The clause "as is enjoyed by white citizens" not only evidences the racial character of the section but provides the standard against which the rights of the protected individuals must be measured.[3] Accordingly, a person of any race can sue an individual of any other race or the same race, a business entity, or a governmental entity under § 1981, so long as he states a claim based on racial discrimination.[4]

Seeking to utilize § 1981 to obtain a de novo hearing on his claim herein, the plaintiff maintains that he and the proposed class he represents are of the race of Mexican-Americans and as such are racially discriminated against. Thus, as a threshold matter it must be determined if the designation "Mexican-American" is indeed a race within the meaning of § 1981, and, if so, how that race is defined so that a finding can be made as to whether he was discriminated against on the basis of being a member of that racial group.

The respective parties have urged upon the court a number of varying and conflicting views of both historical and recent origin as to what constitutes a race. In the court's view of the question, however, it need not attempt to resolve what continues to be sharply debated in the academic community, for the plaintiff's claim against the federal government under § 1981 alleging employment discrimination is barred by the doctrine of sovereign immunity.

## II.

Turning first to the legislative history of the Equal Employment Opportunity Act of 1972, it is helpful to examine why Congress believed it was necessary to amend the Civil Rights Act of 1964 to add a new § 717, 42 U.S.C.A. § 2000e–16, subjecting the federal government for the first time to suit for discriminatory personnel actions based on race, color, religion, sex, or national origin. In the Civil Rights Act of 1964 Congress expressly denied to federal employees the right to utilize that Act to vindicate claims of employment discrimination. 42 U.S.C.A. § 2000e(b). In

---

2. The original language of the section designating the class of protected persons read as follows:

That all persons born in the United States and not subject to any foreign power, excluding Indians not taxed, are hereby declared to be citizens of the United States; and such citizens, of every race and color, without regard to any previous condition of slavery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted

. . . .

Civil Rights Act of 1866, § 1, 14 Stat. 27. In the Civil Rights Act of 1870, § 16, 16 Stat. 140, 144, the opening phrase was amended to its present form to bring within the protected class aliens who are discriminated against due to their race.

3. The standard "white citizen" was utilized for two reasons. First, foremost in Congress' mind was granting the newly freed slaves all of the rights of people who had never been slaves. There was no class of people in the United States at that time that had greater rights, in fact as well as in law, than the class generally described as white citizens. Second, Congress chose the

phrase "white citizen" as opposed to "white persons" to make clear that hereafter the rights of Negroes were to be measured against the rights of citizens and not just free alien whites.

4. That whites, whether they be citizens or aliens, have standing to sue under § 1981, see Phillips v. Columbia Gas of West Virginia, Inc., 347 F.Supp. 533, 539 (S.D.W.Va. 1972), aff'd 474 F.2d 1342 (4th Cir. 1973); Hollander v. Sears, 392 F.Supp. 90 (D.Conn. 1975); Marshall v. Plumbers and Steamfitters Local Union 60, 343 F.Supp. 70 (E.D. La.1972); Central Presbyterian Church v. Black Liberation Front, 303 F.Supp. 894 (E. D.Mo.1969); and Gannon v. Action, 303 F. Supp. 1240 (E.D.Mo.1969), aff'd in part and rev'd in part on other grounds, 450 F.2d 1227 (8th Cir. 1971). See also Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), where the Supreme Court allowed a white person to maintain a 42 U.S.C.A. § 1982 action when he was punished for advocating a black person's right to be a member of a community club. Secs. 1981 and 1982 are derived from the same section of the Civil Rights Act of 1866, § 1, 14 Stat. 27.

lieu of a private right of action, Executive Order 11246, 3 C.F.R. 169 (Supp. 1974), 42 U.S.C.A. § 2000e note; Executive Order 11478, 3 C.F.R. 207 (Supp. 1974), 42 U.S.C.A. § 2000e note; and 5 U.S.C.A. § 7151 provided a means whereby an aggrieved federal employee had an administrative recourse to his employing agency and eventually to the Civil Service Commission (CSC). Dissatisfaction with the adequacy of this administrative remedy, marked uncertainty in pursuing any course of appeal to the courts, and the seemingly unaggressive efforts by the CSC to eradicate discrimination were all foremost in the minds of reformers pushing for the enactment of § 2000e–16. With the matter in this posture the Senate Committee on Labor and Public Welfare, which reported favorably on the section, said:

> An important adjunct to the strengthened Civil Service Commission responsibilities is the statutory provision of a private right of action in the courts by Federal employees who are not satisfied with the agency or Commission decision.

The testimony of the Civil Service Commission notwithstanding,[5] the committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U. S. Government defense of sovereign immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies. Moreover, the remedial authority of the Commission and the courts has also been in doubt. The provisions adopted by the committee will enable the Commission to grant full relief to aggrieved employees, or applicants, including back pay and immediate advancement as appropriate. Aggrieved employees or applicants will also have the full rights available in the courts as are granted to individuals in the private sector under title VII.[6]

Sec. 2000e–16 in its present form originated in the Senate as the result of an amendment offered by Senator Cranston and adopted by the Committee. In the floor debate on the Act Senator Cranston said in regard to his proposal:

> My Federal Government EEO amendment included in the committee bill would:
>
> .   .   .   .   .   .
>
> Fifth. For the first time, permit Federal employees to sue the Federal Government in discrimination cases—

---

5. In defense of its position that it had been responsive to claims by minorities of discrimination in federal employment and that it ought not lose jurisdiction of such claims to the Equal Employment Opportunity Commission, the CSC maintained during Congressional hearings on § 2000e–16 that an aggrieved individual could sue in the courts after exhausting his remedies with the CSC. *See, e. g.,* Hearings on H.R. 1746 Before the General Subcommittee on Labor of the Committee on Education and Labor, 92d Cong., 1st Sess. 319–20, 322 (1971). As is evident from the quoted section of the Senate report, the CSC position on private access to the courts existing without § 2000e–16 was rejected.

6. S.Rep.No.92–415, 1st Sess. 16 (1971). The report by the House Education and Labor Committee expressed the same view as to the necessity of enacting § 2000e–16 to overcome a defense of sovereign immunity:

> Despite the series of executive and administrative directives on equal employment opportunity, Federal employees, unlike those in private sector to whom Title VII is applicable, face legal obstacles in obtaining meaningful remedies. There is serious doubt that court review is available to the aggrieved Federal employee. Monetary restitution or back pay is not attainable. In promotion situations, a critical area of discrimination, the promotion is often no longer available. Information and documents contained in Government files are not obtainable since the Freedom of Information Act exempts internal personnel rules. Under the proposed law, court review, back pay, promotions, reinstatement, and appropriate affirmative relief is available to employees in the private sector; also the Commission has broad powers to conduct an intensive investigation and obtain access to all pertinent records.

H.R.Rep.No.92–238, 1st Sess. 25, 2 U.S.Cong. & Admin.News 1972, pp. 2137, 2160 (1971).

under the theory of Federal sovereign immunity, courts have not generally allowed such suits—and to bring suit either prior to or after CSC review of the agency EEO decision in the case.[7] Senator Williams was one of two floor leaders for the Equal Employment Opportunity Act of 1972. In remarks in regard to § 2000e–16, he viewed the section as having the following effect:

Another significant part of the bill and one that has not had very much debate because it was so clearly accepted at the committee level, concerns our Federal Government employees. The requirement of equal employment opportunity is extended by statute to these employees, and for the first time a clear remedy is provided enabling them to pursue their claims in the district courts following a Civil Service Commission or agency hearing.[8]

All of these remarks went unchallenged. Accordingly, it is apparent that Congress believed that the enactment of § 2000e–16 was necessary to waive the defense of sovereign immunity which was otherwise available to the federal government in suits pursuant to § 1981.[9]

### III.

The case law involving attempts by federal employees to sue the government for alleged employment discrimination other than under § 2000e–16 evidence a consistent rigid application of the sovereign immunity doctrine to most of the requested forms of relief. The plaintiff herein seeks the following individual relief: a declaratory judgment that the defendants have acted contrary to their equal employment responsibilities imposed by statute and executive order, 28 U.S.C.A. §§ 2201 & 2202; damages including but not limited to back pay, 28 U.S.C.A. § 1343(4); an injunction enjoining the defendants from continuing to discriminate against the plaintiff by denying him a promotion, 28 U.S.C.A. § 1343(4); and, relief in the nature of

---

7. 118 Cong.Rec. 4929 (1972).

8. 118 Cong.Rec. 4940 (1972). Senator Williams reiterates this position that § 2000e–16 is necessary to overcome a sovereign immunity defense in the following quote:

Mr. President, I should like to address myself for a few moments to the section of the pending bill which contains significant new procedures and directives to the Civil Service Commission regarding Federal equal employment programs. It also provides, for the first time, to my knowledge, for the right of an individual to take his complaint to court.

. . . [W]ritten expressly into the law is a provision enabling an aggrieved Federal employee to file an action in U. S. District Court for a review of the administrative proceeding record after a final order by his agency or by the Civil Service Commission, if he is dissatisfied with that decision. Previously, there have been unrealistically high barriers which prevented or discouraged a Federal employee from taking a case to court. This will no longer be the case. There is no reason why a Federal employee should not have the same private right of action enjoyed by individuals in the private sector, and I believe that the committee has acted wisely in this regard.

. . . I am convinced that the language in the committee bill regarding Federal employees will prove a substantial help to those, who, for so long, have been "second class citizens," as far as equal employment opportunity is concerned.
118 Cong.Rec. 4922 (1972).

9. 42 U.S.C.A. § 2000e–16(e) provides:
Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government.
Sec. 2000e–16 placed many new powers and responsibilities with the CSC relating to discrimination in federal employment. Thus, subsection (e) was added to make clear that § 2000e–16 did not transfer or limit any authority or responsibility from agency officials to eradicate discrimination within their department, but, rather, they are to continue to independently carry out their respective obligations under existing law. The subsection cannot be construed as an acknowledgment by Congress that the government's sovereign immunity has been waived as to suits alleging employment discrimination under § 1981 or any other statute previous to § 2000e–16.

mandamus to compel defendants to carry out their duties under the Civil Rights Act of 1964 and Executive Order 11478, 28 U.S.C.A. § 1361.[10]   On behalf of the proposed class, the plaintiff seeks the additional relief of an injunction barring the defendants from further hiring or promoting persons not members of the proposed class until such time as defendants effectuate a population parity equal employment program that would within two years ensure representation of plaintiff's class at all wage levels in the Soil Conservation Service.

■■   All of the forms of relief requested by the plaintiff are of such a nature that it would impinge upon the United States rather than upon the named defendants and thereby is an unconsented suit against the sovereign if brought pursuant to § 1981.   The mere fact that defendants are named individually does not mean that this is an action against them rather than the United States.   The "effect of the action upon the sovereign rather than its form is controlling." Ogletree v. McNamara, 449 F.2d 93, 100 (6th Cir. 1971).   In Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970), the plaintiff brought a complaint based on his not receiving a promotion in the Corps of Engineers allegedly due to discrimination because of his national origin.   Then Circuit Judge, now Mr. Justice Blackmun, writing for the court affirmed dismissals of three counts: a claim seeking review of his CSC administrative decision, a claim seeking relief in the nature of mandamus to compel his superiors to comply with equal employment opportunity executive orders, and a claim seeking monetary damages.   The first two counts were found to be properly dismissed against named individuals

in the Corps of Engineers on the following rationale:

> A suit against an officer of the United States is one against the United States itself "if the decree would operate against" the sovereign; Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) ; or if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration", Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) ; or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act", Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949).   See Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed. 2d 15 (1963).   These principles, we feel, operate to identify the first and second counts against the named individuals with counts against the United States, for relief under the counts would compel those individuals to promote the plaintiff, with the natural effect a promotion has upon the Treasury, and to exercise administrative discretion in an official personnel area.   This obviously is not a case which concerns either of the exceptions recognized in Dugan v. Rank, *supra*, 372 U.S. at 621–622, 83 S.Ct. 999, namely, where the officer's act is beyond his statutory power or where, although the action is within the scope of his authority, the power, or the manner of its exercise, is constitutionally void.   See Simons v. Vinson, 394 F.2d 732, 736 (5th Cir. 1968), *cert. denied*, 393 U.S. 968, 89 S.Ct. 398, 21 L.Ed.2d 379.

415 F.2d at 1277.   *See also* McQueary v. Laird, 449 F.2d 608 (10th Cir. 1971).

---

10. The plaintiff does not ask for relief in the nature of mandamus to compel the defendants to carry out their duties pursuant to 42 U.S.C.A. § 1981.   However, the discussion herein would be equally applicable had such relief been requested.   *See* Petterway v. Veterans Admin. Hosp., Houston, Tex., 495 F.2d 1223, 1225 n. 3 (5th Cir. 1974).

*Gnotta* was followed in Blaze v. Moon, 440 F.2d 1348 (5th Cir. 1971), dismissing a racial discrimination suit by an employee of the Corps of Engineers seeking injunctive relief and Beale v. Blount, 461 F.2d 1133, 1137 (5th Cir. 1972), dismissing a count for injunctive relief against individuals in the Post Office Department to refrain from racially motivated employment practices.

 In regard to the request on behalf of the proposed class that the court order and enforce a population parity affirmative action program within the Soil Conservation Service, to grant such a remedy would be an even more serious incursion into the operation of the sovereign's business. In Ogletree v. McNamara, *supra,* 449 F.2d 93, the Sixth Circuit faced a similar situation. There black employees at Wright Patterson Air Force Base sought to completely enjoin the Air Force promotion system at the base due to alleged discrimination. Both the district and circuit courts balked at granting such relief:

> If granted in full as prayed for, the relief sought by the plaintiffs would at least temporarily halt all employee promotions and would require the United States District Court in the Southern District of Ohio to open its doors for plenary hearings on every employee complaint alleging that lower level personnel decisions resulted from or were affected by racial bias. In this regard the following comment from the District Judge's opinion does not seem far-fetched:

> "In substance the requested relief would require this court to supervise and control the procedures, adopted by the defendants in the exercise of their discretion as officials of the executive branch of government, for the hiring, promotion and termination of civilian employees at

one of this country's largest military installations."
449 F.2d at 99–100.[11]

## IV.

An order will be entered dismissing plaintiff's complaint as barred by the sovereign's immunity insofar as it is predicated upon 42 U.S.C.A. § 1981.[12] This cause will proceed as outlined in the court's previous memorandum opinion filed herein, Baca v. Butz, *supra,* 376 F.Supp. at 1010.

 Plaintiff's application to proceed as a class under Rule 23 will also be denied because his claim of employment discrimination resulting in a denial of promotions will be decided upon review of his administrative record and any supplemental evidence relevant to his case. Accordingly, the court will not have before it questions of fact common to the proposed class.

---

11. To be sure there may be instances where such an affirmative action plan is warranted, but Congress has granted the power to order and enforce such a plan to the CSC and not the courts. 42 U.S.C.A. § 2000e–16(b).

12. *Accord,* Archuleta v. Calloway, 385 F.Supp. 384 (D.Colo.1974) ; Willingham v. Lynn, 381 F.Supp. 1119, 1122–23 (E.D.Mich.1974) ; *see* Place v. Weinberger, 497 F.2d 412 (6th Cir. 1974).